**UNITED STATES of America, Appellee,**

v.

**Zeno SEMKIW, Appellant.**

No. 82–1717.

United States Court of Appeals, Third Circuit.

Argued May 10, 1983.

Decided July 20, 1983.

Richard D. Malmed (argued), Hepburn Willcox Hamilton & Putnam, Philadelphia, Pa., for appellant.

Elizabeth K. Ainslie (argued), Asst. U.S. Atty., Peter F. Vaira, U.S. Atty., Walter S. Batty, Jr., Asst. U.S. Atty., Philadelphia, Pa., for appellee.

Before ADAMS and WEIS, Circuit Judges, and DEBEVOISE, District Judge.*

## OPINION OF THE COURT

WEIS, Circuit Judge.

The defendant in this case was granted use immunity and compelled to testify before a grand jury about a crime for which he was later indicted. He contends that the Assistant United States Attorney who tried the case used the grand jury testimony as a "discovery deposition" and thus violated the fifth amendment privilege against self-incrimination. Because the record is inadequate to evaluate the validity of the defendant's contention, we remand for further proceedings.

* The Honorable Dickinson R. Debevoise, United States District Judge for the District of New Jersey, sitting by designation.

1. Section 51 prohibits:
   [t]he payment of any ... compensation of any kind or the granting of any gift or gratuity of any kind ... by or on behalf of a subcontractor ... to any ... employee, or agent of a prime contractor holding a negotiated contract entered into by any department, agency or establishment of the United States for the furnishing of ... equipment or services of any kind whatsoever ... either as an inducement for the award of a subcontract or order ... or as an acknowledgement of a subcontract or order previously awarded.
   Section 54 sets penalties for knowing violations of the statute.

Defendant Zeno Semkiw was indicted for violating the anti-kickback statute, 41 U.S.C. §§ 51 and 54.[1] The government charged that defendant, who was a purchasing agent for Amtrak, had accepted a new automobile as a gift from a subcontractor doing business with the railroad. A jury found him guilty.

Prior to the indictment, an FBI agent interviewed Semkiw about his receipt of the automobile and took a statement from him. The government later compelled Semkiw to testify about the transaction before a grand jury by granting him use immunity. Defendant filed pretrial motions to suppress the statement and dismiss the indictment. The district court denied both.

The evidence at the suppression hearing established that an FBI agent interviewed defendant in a vacant office at Semkiw's place of employment. The interview took place in the presence of the defendant's superior, who had summoned him to the office, and a member of the Amtrak security force. The FBI agent informed defendant of the purpose of the interview, told him that he was not under arrest, and advised him that he did not have to talk.

Defendant was not told that he had a right to a lawyer, and at the hearing he contended that this omission violated *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The district judge found that the challenged statement "was not given while the defendant was in custody or such compulsive circumstances" as to invoke *Miranda*. The judge therefore denied the motion to suppress and permitted the FBI agent to testify about the interview at trial.

█ The denial of the suppression motion does not warrant elaborate consideration. Under controlling law, *Miranda* warnings are required only when a person has been deprived of his freedom of action in some significant way. *See Beckwith v. United States,* 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976); *Steigler v. Anderson,* 496 F.2d 793 (3d Cir.), *cert. denied,* 419 U.S. 1002, 95 S.Ct. 320, 42 L.Ed.2d 277 (1974). The record here fully supports the finding of a lack of compulsive circumstances. Because defendant failed to establish the predicate for application of the *Miranda* rule, the district court's ruling on this issue was correct.

We are troubled, however, by the defendant's contention that the government violated his use immunity by giving the prosecutor access to the grand jury testimony.

In his memorandum in support of the motion to dismiss, defendant asserted that the government already possessed all the evidence necessary to indict him when he appeared before the grand jury. By compelling him to testify under these circumstances, Semkiw argued, the government had in effect taken a pretrial deposition and discovered his defense to the charges. Defendant sought dismissal on the ground that disclosure of his testimony to the prosecuting attorney would give the government an unfair advantage in trial preparation and plea bargaining.

The government did not deny that the prosecuting attorney was familiar with the defendant's grand jury testimony. Instead, it belittled Semkiw's contention that the prosecution's knowledge of his defense put him at a disadvantage as being the "type of claim [that] could be made in any case in which a defendant has previously given immunized testimony." According to the government, dismissal would effectively transform the use immunity granted to defendant into transactional immunity.

At the hearing on the motion, defendant asserted that the government's designated trial counsel had actually reviewed his grand jury testimony. Defendant, however, did not specifically request dismissal as the remedy. Rather, he asked the court to impose "a prophylactic barrier" between the grand jury and the Assistant United States Attorney, so that the compelled testimony could "not be used ... to the defendant's disadvantage during the course of the trial or pretrial preparation."

The prosecution stipulated at the hearing that it did have "all of the evidence it has ever had against Zeno Semkiw at the time it sought an order conferring use immunity on him." The government asserted, nevertheless, that there was "no proof" and "no evidence" that it had compelled defendant to testify for the purpose of obtaining a strategic advantage at trial.

In addition, the government neither admitted nor denied that its attorney had actually read the defendant's immunized testimony in preparation for the upcoming trial. It merely stipulated that "lead counsel had *access* to the grand jury testimony ... at the time this indictment was prepared and presented to the grand jury." (Emphasis added.) In response to the defendant's request that the trial attorney be insulated from the immunized testimony, the government said that this was "a different issue than dismissing the indictment."

The district judge ruled that defendant was not entitled to have the indictment dismissed "solely because he was compelled to testify before the grand jury on matters concerning which the Government had independent evidence." The defendant's request for a barrier between the government trial counsel and the grand jury testimony was not addressed.

At trial, the government's case was presented by the same Assistant United States Attorney whom defendant accused of reading his grand jury testimony. On appeal, defendant renews his contention that the government violated his use immunity.

█ The power to compel testimony from an unwilling witness is limited by the fifth amendment, and any grant of immunity must be co-extensive with the privilege against self-incrimination. Thus, the testi-

mony compelled from a witness under immunity must leave him and the government in "substantially the same position" as if the witness had retained the right to remain silent. *The Pillsbury Co. v. Conboy,* —— U.S. ——, ——–——, 103 S.Ct. 608, 613, 74 L.Ed.2d 430 (1983); *Kastigar v. United States,* 406 U.S. 441, 457, 458–59, 92 S.Ct. 1653, 1663, 1664, 32 L.Ed.2d 212 (1972); *Murphy v. Waterfront Commission,* 378 U.S. 52, 79, 84 S.Ct. 1594, 1609, 12 L.Ed.2d 678 (1964).

■ The Organized Crime Control Act of 1970, 18 U.S.C. §§ 6001–6005, authorizes federal prosecutors to apply to a district court for an order directing a witness to answer questions. *Id.* § 6003. The witness may not refuse to comply with the order on the basis of his privilege against self-incrimination. *Id.* § 6002. In exchange, "no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case. . . ." *Id.*

The Supreme Court upheld the constitutionality of this statute in *Kastigar, supra.* It viewed use immunity as a rational accommodation between the need for effective law enforcement and the imperatives of the fifth amendment. The Court reasoned that the statute was compatible with the privilege against self-incrimination because "[i]t prohibits the prosecutorial authorities from using the compelled testimony in *any* respect, and it therefore insures that the testimony cannot lead to the infliction of criminal penalties on the witness." 406 U.S. at 453, 92 S.Ct. at 1661 (emphasis in original).

The Court interpreted the statute's "total prohibition on use" as a comprehensive safeguard against self-incrimination, commensurate with invoking the privilege itself. *Id.* at 460–61, 92 S.Ct. at 1664–65. Moreover, it emphasized that the witness is "not dependent for the preservation of his rights upon the integrity and good faith of the prosecuting authorities." *Id.* at 460, 92 S.Ct. at 1665. Once a defendant shows that he has testified under immunity, the prose-

cution bears "the heavy burden" of proving that the compelled testimony will not be used against him in any way. *Id.* at 461, 92 S.Ct. at 1665.

In *United States v. Pantone,* 634 F.2d 716 (3d Cir.1980), a defendant whose first conviction was reversed and remanded for a new trial was compelled to testify before a grand jury prior to the second trial. He moved to dismiss the indictment or, in the alternative, to disqualify the United States Attorney who had prosecuted the first trial from participating in the retrial, on the ground that the attorney had conducted the grand jury proceedings at which the defendant testified under immunity. The district court denied the motion following a full *Kastigar* hearing at which the United States Attorney specifically promised that the government's presentation on retrial would be identical to the original case. We affirmed the defendant's conviction at the second trial.

The defendant in *Pantone* argued for the creation of a per se rule requiring the withdrawal of a prosecutor who may be privy to compelled testimony. He reasoned that a prosecutor's mere exposure to compelled testimony made it virtually impossible for the government to show that it did not make indirect use of the testimony. The unusual circumstances in that case, however, undermined the defendant's argument.

By examining the transcripts of the first and second trials in *Pantone,* we could compare the strategy, cross-examination techniques, and introduction of evidence at the retrial with those at the original trial. We were therefore able to determine from the record that the government had met its heavy burden under *Kastigar.* Nevertheless, we warned that "[t]he difficulties of discerning use, or as here indirect use, of immunized testimony make it critical that prosecutors be held to a high standard in proving that their actions are untainted by exposure to prior compelled testimony." *Id.* at 723.

Unlike *Pantone,* the record at hand does not enable us to decide whether the defend-

ant's immunity was violated and, if so, whether the violation amounts to harmless error. *See United States v. Hasting,* —— U.S. ——, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983). The inadequacy of the record largely results from the government's failure to recognize that it had the "affirmative duty to prove," *United States v. Kastigar,* 406 U.S. at 460, 92 S.Ct. at 1665, that the defendant's testimony would not be used against him in any respect.

The stipulations at the hearing did not discharge the government's burden on the absence of taint. One of the undisputed facts was that the prosecution already possessed all of its evidence against defendant even before it compelled him to testify. It may fairly be assumed from this state of affairs that the government intended to use the defendant's testimony to its own advantage in the preparation of its case against him. "Such use could conceivably include . . . refusing to plea-bargain, interpreting evidence, planning cross-examination, and otherwise generally planning trial strategy." *United States v. McDaniel,* 482 F.2d 305, 311 (8th Cir.1973); *see also United States v. Pantone,* 634 F.2d at 721. Thus the record does not show that defendant and the prosecution remained in substantially the same position as if defendant had not testified.

The possibility that the government compromised the defendant's immunity is heightened by the fact that it assigned the trial to an attorney who had "access" to the compelled testimony. It is no answer for the prosecution to say, as it does on this appeal, that defendant did not prove that the trial attorney learned his defense from the testimony. The burden of proof at the hearing on this issue rested with the government, not the defendant.

The defendant's request to bar the Assistant United States Attorney who had the opportunity to study the grand jury transcript from conducting the trial was never answered at the hearing. Yet the government might easily have removed any cloud from the trial by assigning it to another attorney who did not and would not review the immunized testimony. This procedure is not novel. Indeed, the government need have looked no further for guidance than its own UNITED STATES ATTORNEYS' MANUAL.

Section 1–11.400 of the MANUAL recognizes that the government's power to compel testimony is tied to *Kastigar's* sweeping proscription on using the fruits of the testimony against the witness. Accordingly, the government attorneys are instructed that the Attorney General must personally authorize the prosecution of a person who has testified under immunity for an offense that is "closely related" to his compelled testimony. In seeking this approval, the attorney must explain "how he will show affirmatively that no . . . 'non-evidentiary' use has been or will be made of the compelled testimony in connection with the proposed prosecution (for example, by having the prosecution handled by an attorney unfamiliar with the substance of the compelled testimony)."

The district court in this case made no findings of fact on the immunity issue. We do not know the extent of the Assistant United States Attorney's "access" to the grand jury testimony, nor what use she may have made of it in the preparation and conduct of the trial. It follows that we are also unable to determine whether defendant was prejudiced by any violation of his immunity. The case must therefore be remanded to the district court so that it may conduct an evidentiary hearing and make findings of fact and conclusions of law. *See United States v. Nemes,* 555 F.2d 51, 55 (2d Cir.1977).

The case will be remanded to the district court for further proceedings consistent with this opinion.