**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**R. Michael CROWSON,**
**Defendant-Appellant.**

**No. 86–3069.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 5, 1987.

Decided Sept. 29, 1987.

Deborah Smith, Anchorage, Alaska, for plaintiff-appellee.

Nancy Shaw, Anchorage, Alaska, for defendant-appellant.

Before GOODWIN, ANDERSON and BRUNETTI, Circuit Judges.

J. BLAINE ANDERSON, Circuit Judge:

Richard Michael Crowson ("Crowson") appeals his conviction for racketeering and fraud violations. Crowson raises two main issues on appeal: first, that the government wrongfully used his grand jury testimony; and, second, that the trial court erred in restricting his opening statement, in failing to fully instruct the jury, and in allowing prosecutorial misconduct during closing argument. We find no error and affirm.

I.

*Background*

On October 5, 1984, the federal grand jury in the District of Alaska issued a subpoena to Crowson, a Seattle businessman and attorney, to appear and produce individual business, sole proprietorship, and corporate records. Crowson indicated, prior to testifying, that he would assert his fifth amendment privilege to avoid production of his individual and sole proprietor-

ship business records. The government requested and was granted an order granting use immunity to Crowson for the production of those records pursuant to 18 U.S.C. §§ 6002–6003 (1982). The government's stated purpose for subpoenaing Crowson was to "obtain and authenticate documents in his possession."

As for the corporate records, assistant United States attorney Deborah Smith ("Smith") stated that "[w]e are not requesting an order or offering a grant of immunity as to the act of production of corporate records subpoenaed." Counsel for Crowson, Dan Dennis, indicated Crowson would not invoke his Fifth Amendment privilege to the foundational questions concerning the corporate records. However, he said questions beyond that might cause Crowson to invoke his fifth amendment privilege.

Pursuant to the subpoena, Crowson made several appearances before the grand jury. On August 14, 1985, the grand jury returned an indictment charging Crowson with violations of RICO (18 U.S.C. § 1962) (1982) and related offenses. Crowson moved to suppress evidence derived from the grant of immunity pursuant to *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), alleging evidentiary and non-evidentiary uses of his grand jury testimony. During the initial oral argument on the *Kastigar* motion, the district court, questioned, *sua sponte*, the validity of the indictment and whether the questioning of Crowson exceeded foundational questions and elicited incriminating testimony. In light of this, the government sought a superseding indictment. This indictment was returned on December 20, 1985, and was substantially the same as the original indictment except that a codefendant was not indicted.

Following the return of the superseding indictment, Crowson filed a motion to dismiss the indictment based on *Kastigar* and renewed the motion to suppress. The government submitted, in support of its opposition to Crowson's motions, affidavits and testimony by assistant United States attorneys Smith, Joseph W. Bottini ("Bottini"), and IRS special agent Wayne Sievers ("Sievers"). This evidence was submitted by the government to establish that no direct or derivative use had been made of Crowson's immunized testimony and to demonstrate an independent source for the evidence used against him. The district court denied the motion to dismiss the superceding indictment, finding that "no evidence given by Crowson before the grand jury was used or considered either directly or was used by the government derivatively in order to obtain the superseding indictment." The district court also found that with the exception of two statements,[1] there was a prior, independent source of evidence for the substantive statements made by Crowson during his appearance before the "first" grand jury.

Crowson and two codefendants were found guilty by a jury of racketeering and fraud violations resulting from a scheme to defraud Sealaska and its subsidiary, Pacific Western Lines, of approximately three to five million dollars. Crowson then timely appealed to this court.

## II.

### *Discussion*

#### A.  Immunized Testimony

A grant of use or derivative use immunity pursuant to 18 U.S.C. § 6002 prohibits the use of compelled testimony and evidence derived therefrom in any subsequent criminal proceeding. *Kastigar*, 406 U.S. at 453, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972); *United States v. Lipkis*, 770 F.2d 1447, 1450 (9th Cir.1985); *United States v. Rogers*, 722 F.2d 557, 560 (9th Cir.1983), *cert. denied*, 469 U.S. 835, 105 S.Ct. 129, 83 L.Ed.2d 70 (1984). An individual who has testified under a grant of use immunity is not, however, shielded from all prosecution. *Lipkis*, 770 F.2d at 1450. "Use immunity does not protect the substance of compelled

---

1. The district court, nevertheless, found that no use or derivative use was made of either of these two statements.

testimony, it only protects against the use of compulsory testimony as a source of evidence." *Id.* (citing *Kastigar*, 406 U.S. at 453, 92 S.Ct. at 1661). Thus, before trial, the government must show that any evidence it intends to present is derived from a source independent of immunized testimony. *Rogers*, 722 F.2d at 560. The government must prove the independent source by a preponderance of the evidence, and we will uphold a district court's findings unless clearly erroneous. *Id.* This court has permitted the government to meet its burden of proof as to the existence of independent, prior sources through affidavits. *Id.*

The district court found that, except for two statements, the government established an independent source for each substantive statement made by Crowson before the grand jury. Crowson argues that the government did not prove by the required preponderance that the testimony and exhibits produced at the "second" grand jury and at trial were not tainted by his immunized testimony before the "first" grand jury.[2]

At the *Kastigar* evidentiary hearing, the government presented affidavits and grand jury testimonies from Smith, Bottini, and Sievers. Each testified that no direct evidentiary or derivative use was made of Crowson's testimony before the "first" grand jury. Sievers' affidavit identified all statements made by Crowson which he considered substantive and then listed at least one prior, independent source of evidence available to the government for the same information. Smith's affidavit corroborated that an independent, prior source existed as to all substantive statements.[3] Defense counsel was allowed to cross-examine both Smith and Sievers. All documents establishing prior, independent sources, along with a list of evidence obtained in chronological order were made available to defense counsel. Furthermore, the district court inspected all of the grand jury transcripts *in camera* before ruling that an independent, prior source of evidence existed for all but two of the substantive statements.

■ Crowson argues that even if the government met its burden of showing an independent, prior source for all of his immunized testimony, *Kastigar* places a second burden on the government: it must follow reliable procedures for segregating the immunized testimony and its fruits from officials pursuing any subsequent investigations. In essence, Crowson asks this court to create a *per se* rule which would require the withdrawal of prosecution officials who may be privy to compelled testimony.

It is uncontested that the same prosecution team involved in the "first" grand jury proceeding presented the charges in the "second" grand jury proceeding and conducted the trial. The district court ruled that it was not necessary for the government's attorneys and the investigator to withdraw from the case because of their exposure to Crowson's immunized testimony. The United States Attorneys' Manual, § 1–11.400 recommends that the prosecution be handled by an attorney unfamiliar with the substance of the compelled testimony. Case law also suggests that the government might easily remove any cloud from the trial by assigning the case to another attorney who has not been exposed

---

2. While the government argues that Crowson waived his fifth amendment privilege by failing to assert it, the district court found that Crowson properly asserted and did not waive his fifth amendment privilege to all substantive statements that went beyond the scope of answers to foundational questions during his grand jury testimony. As a result, our review is confined to whether the government established by a preponderance an independent source of evidence for each substantive statement elicited during the grand jury proceedings.

3. Sievers and Smith pointed out that, frequently, the substantive information Crowson provided orally appeared on the face of the document he was being asked to authenticate. The documents, themselves, establish a prior, independent source of evidence which the government was entitled to use against defendants. *See United States v. Doe*, 465 U.S. 605, 610–12, 104 S.Ct. 1237, 1240–42, 79 L.Ed.2d 552 (1984).

to the immunized testimony.[4] *See United States v. Semkiw*, 712 F.2d 891, 895 (3d Cir.1983). However, there is no *per se* rule requiring the withdrawal of a prosecutor or other government official who may have been exposed to immunized testimony. *Cf. United States v. Catalano*, 491 F.2d 268, 272 (2d Cir.), *cert. denied*, 419 U.S. 825, 95 S.Ct. 42, 42 L.Ed.2d 48 (1974); *Semkiw*, 712 F.2d at 894. Whether exposure to such testimony places a more difficult burden on the government to prove that their actions were untainted by such exposure is undecided in this circuit and is in some dispute among other circuits. *See United States v. Byrd*, 765 F.2d 1524 (11th Cir.1985); *Semkiw*, 712 F.2d 891; *United States v. McDaniel*, 482 F.2d 305 (8th Cir.1973); *see also United States v. Contreras*, 755 F.2d 733, 737 (9th Cir.), *cert. denied sub nom Soto v. United States*, 474 U.S. 832, 106 S.Ct. 100, 88 L.Ed.2d 81 (1985) (no improper use of immunized testimony where the prosecutor exposed to testimony testified that she had not discussed testimony with any other member of prosecution team and would have withdrawn from the case had it gone to trial).

Most of the case law suggests that if the prosecution team has been exposed to the immunized testimony, the government may still use the evidence derived from compelled testimony if it meets its burden of showing that the evidence it intends to present is derived from a prior, independent source. *See Block v. Consino*, 535 F.2d 1165, 1169 (9th Cir.), *cert. denied*, 429 U.S. 861, 97 S.Ct. 165, 50 L.Ed.2d 140 (1976) (Block still protected from government use of his compelled bankruptcy testimony since it cannot be used unless an independent, collateral source is proved); *Catalano*, 491 F.2d at 272 (prosecutor established he had prior, independent knowledge of substantially all of the information covered in the compelled testimony, thereby foreclosing any possibility of taint); *United States v. Caporale*, 806 F.2d 1487, 1518–19 (11th Cir.1986), *cert. denied*, — U.S. ——, 107 S.Ct. 3265, 96 L.Ed.2d 679

(1987) (although the prosecutor had read immunized testimony prior to trial and the defendant listed a number of facts that could have come only from his prior testimony, no *Kastigar* violation occurred because the prosecutor established an independent source for each fact).

We believe the government's burden of showing that its *evidentiary* use of the immunized testimony was proper should not change merely because members of the prosecution team had access to the testimony. "The focus of the inquiry under *Kastigar* ... is not whether the prosecutor was aware of the contents of the immunized testimony, but whether he used the testimony in any way to build a case against the defendant." *Caporale*, 806 F.2d at 1518.

A more difficult question is what proof or procedures the government must employ to carry its burden of showing that it made no *non-evidentiary* use of the immunized testimony. "Such [non-evidentiary] use could conceivably include assistance in focusing the investigation, deciding to initiate prosecution, refusing to plea bargain, interpreting evidence, planning cross-examination, and otherwise generally planning trial strategy." *McDaniel*, 482 F.2d at 311. *See also Semkiw*, 712 F.2d at 895. *McDaniel* suggests that the government cannot meet its burden of showing that there was no non-evidentiary use of the immunized testimony merely by proving a prior, independent source for the information:

> We find, however, that even though the voluminous reports, which we have examined, may have afforded proof of an independent source of the evidence adduced at McDaniel's trial, such reports nevertheless fail to satisfy the government's burden of proving that the United States Attorney, who admittedly read McDaniel's grand jury testimony prior to the indictments, did not use it in some significant way short of introducing tainted evidence. [citations omitted].

---

4. We agree. We are of the view that United States Attorneys should be wary not to jeopardize reasonable and well-supported prosecution efforts, and promote appeals such as this one, by failing to observe the Manual's recommendation.

*McDaniel,* 482 F.2d at 311. *Semkiw* suggests that proving a prior, independent source for any evidence it may use could work against the government:

> One of the undisputed facts was that the prosecution already possessed all of its evidence against defendant even before it compelled him to testify. It may fairly be assumed from this state of affairs that the government intended to use the defendant's testimony to its own advantage in the preparation of its case against him.

*Semkiw,* 712 F.2d at 895.

On the other hand, in discussing one non-evidentiary use of immunized testimony, the decision to indict, *Byrd* came to a different conclusion:

> So long as all the evidence presented to the grand jury is derived from legitimate sources independent of the defendant's immunized testimony, and the grand jury finds that independent evidence sufficient to warrant a return of an indictment, the defendant's privilege against self-incrimination has not been violated.

*Byrd,* 765 F.2d at 1530. The *Byrd* court then went on to examine other non-evidentiary uses of Byrd's immunized testimony. In deciding that some of these uses "would probably constitute an impermissible use of *evidence* derived indirectly from the immunized testimony," *id.* at 1531 (emphasis in original), the court in *Byrd* found that:

> the government would have the burden of showing by a preponderance of the evidence *either* that the prosecutors on the case had no direct or indirect access to the immunized testimony, *or* that the evidence adduced was derived from independent sources. Perhaps the government could meet its burden by demonstrating that everything revealed in Byrd's immunized testimony was previously known to the government through independent sources, *or* that any new information obtained directly or indirectly from Byrd's testimony did not make its way into evidence or facilitate the discovery or introduction of other evidence.

*Id.* (emphasis added) (footnote omitted). *Byrd* found that *McDaniel* and *Semkiw* were not contrary, but that in those two cases, "the courts simply held that the government had not carried its burden of establishing by a preponderance of the evidence that the prosecutors (who admittedly had full access to the defendants' immunized testimony in preparing for the trials), had not indirectly incorporated their knowledge of that testimony into the trial." *Id.* The issue we are confronted with then is whether the government met its burden of proof.

■ The government has established a prior, independent source for all of the evidence introduced before the "second" grand jury and at trial. Even assuming that this is insufficient to meet the government's burden of showing that there was no *non-evidentiary* use of Crowson's immunized testimony, we feel that there are other indications that the government did not indirectly use his testimony for non-evidentiary purposes despite its admitted access to that testimony.

First, the purpose of subpoenaing Crowson was to obtain various records and to authenticate those records. As a consequence, it cannot be so readily assumed that the government intended to use Crowson's testimony for some other nonevidentiary use. Second, the investigation into the substantive offenses charged against Crowson had been substantially completed at the time he testified before the first grand jury. Hence, Crowson was aware that he was the target of an ongoing investigation when he testified. Furthermore, the decision whether to initiate the prosecution, whether to seek an indictment, and whether to focus the investigation had already been made when he was called before the "first" grand jury. Finally, the record is silent as to the prosecution's potential use of the immunized testimony for other non-evidentiary purposes such as planning cross-examination, interpreting evidence, and otherwise generally planning trial strategy. But, as the *Byrd* court stated, to require that a Chinese wall be erected between the immunized testimony and the prosecution would be the equivalent of

granting transactional immunity, "thus negating the plain import of *Kastigar* that 'both [18 U.S.C. § 6002] and the Fifth Amendment allow the government to prosecute using *evidence* from legitimate independent sources.'" *Byrd*, 765 F.2d at 1531 (quoting *Kastigar*, 406 U.S. at 461, 92 S.Ct. at 1665). Indeed, if the government can prove a prior, independent source for its evidence, then the non-evidentiary purposes of trial strategy, etc., would seemingly have been developed anyway. Thus, any non-evidentiary use of the immunized testimony would have been inevitable and harmless in any regard.

B. Other Allegations of Trial Error[5]

We have considered Crowson's other claims as to alleged errors committed by the district court and conclude that these arguments have no merit and do not, in this case, warrant further consideration.

### III.

### CONCLUSION

The government met its burden of establishing by a preponderance of the evidence that there was a wholly independent source for all evidence used against Crowson. No direct or derivative use—evidentiary or non-evidentiary—was made of Crowson's testimony compelled pursuant to 18 U.S.C. §§ 6002–6003. Likewise, we decline defendant's invitation to create a *per se* rule requiring withdrawal of a prosecutor or other government official who may have been exposed to immunized testimony. The district court's ruling in this matter was not clearly erroneous and we, therefore,

AFFIRM.

---

**5.** The remaining allegations of error are as follows:

    1) That the trial court erred in refusing to allow defense counsel to discuss the elements of the charged offenses during his opening statement. There was no error. The discussion was improperly argumentative.

    2) That the trial court erred in not properly instructing the jury on the Racketeer Influ-

enced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962. This is simply incorrect.

    3) That the trial court erred in overruling defense counsel's objection to the prosecutor's argument to the jury during summation. There was no error. The defendant did testify.