Reese GWILLIM, Plaintiff–Appellant,

v.

CITY OF SAN JOSE, Joan Gallo, Individually and in Her Capacity as City Attorney for the City of San Jose, Joseph McNamara, Individually and in His Capacity as Police Chief for the City of San Jose, Defendants–Appellees.

No. 89–16403.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 15, 1991.

Decided March 25, 1991.

Craig M. Brown, San Jose, Cal., for plaintiff-appellant.

Andrea Bryan Ferguson, Sr. Deputy City Atty., San Jose, Cal., for defendants-appellees San Jose.

Before SCHROEDER, CANBY and NOONAN, Circuit Judges.

NOONAN, Circuit Judge:

Reese Gwillim brought suit against the City of San Jose (San Jose); Joan Gallo, the City Attorney; and Joseph D. McNamara, the Police Chief, seeking declaratory and injunctive relief and damages on the ground that the defendants had violated his civil rights contrary to 42 U.S.C. § 1983. The issue in the case is a novel one, whether the transmission of immunized testimony to a prosecutor by the administrators who have obtained it is, in itself, a violation of the privilege against self-incrimination guaranteed by the Fourteenth Amendment

against infringement by the state. The district court, on motion for summary judgment, held that in the circumstances of the case the constitutional right was not infringed by such transmission. We affirm the district court.

## BACKGROUND

Gwillim is a police officer on the San Jose force. In 1987 a fellow female officer, working with him on an undercover investigation, informed the police department that Gwillim had engaged in undesired sexual advances to her. Thereupon the Internal Affairs unit of the department began an administrative inquiry into the alleged conduct and another unit of the department began a criminal investigation.

On April 20, 1987 a criminal investigator sought to question Gwillim. He invoked the privilege against self-incrimination. Later in the day members of the Internal Affairs unit interviewed him and advised him that if he refused to answer their questions he could be subjected to departmental charges which could result in his dismissal from the department. He was given the following admonition:

You are advised that I am authorized by the Chief of Police to question you as part of an official investigation by the San Jose Police Department. You will be asked questions specifically directed and narrowly related to the performance of your official duties. You are entitled to all of the rights and privileges guaranteed by the Constitution and laws of the United States and the State of California, including the right not to be compelled to incriminate yourself and the right to have legal counsel present at each and every stage of the investigation.

I further wish to advise you that if you refuse to answer questions relating to the performance of your official duties, you will be subject to Departmental charges which could result in your dismissal from the San Jose Police Department.

If you do answer, your statements and any information or evidence gathered by reason of such statements will be held confidential, consistent with Penal Code section 832.7 and will not be divulged except as required by law. Your statements may, however, be used against you subsequently in relation to Departmental charges. In addition, any statements you make under the compulsion or the threat of such discipline cannot be used against you in any subsequent criminal proceeding.

After receiving this admonition Gwillim was interviewed for approximately one hour and replied to the questions posed. The interview was tape recorded and transcribed and resulted in a transcript of 25 pages. Sometime within the next three weeks the transcript was turned over by the defendants to the Santa Clara County District Attorney's Office.

Again on July 10, 1987 Gwillim was interviewed for administrative purposes and given the same immunity admonition. He thereupon responded to questions for one hour. This interview, too, was tape recorded and transcribed and resulted in a transcript of 24 pages. Some time before September 24, 1987 this transcript was turned over by the defendants to the Santa Clara County District Attorney's Office.

Both transcripts were read by Dale Sanderson, the Deputy District Attorney assigned to prosecute criminal proceedings against Gwillim. In Sanderson's view it was important to convince the woman police officer, the complaining witness, to authorize the initiation of a criminal prosecution. In order to motivate her to do so Sanderson used the first transcript to persuade her to give her consent to initiating the prosecution.

In the criminal prosecution that followed, Gwillim moved to recuse Sanderson because he had access to the immunized statements. The trial court granted this motion. Sanderson's use of the statements before his recusal was made the ground for another motion by Gwillim to dismiss the criminal proceeding. This motion was granted by the Santa Clara County Superior Court but was reversed on appeal to the Sixth District Court of Appeals.

In transmitting Gwillim's statements to the County District Attorney the defendants acted pursuant to a California statute. That statute reads as follows:

> Peace officer personnel records and records maintained by any state or local agency pursuant to Section 832.5, or information obtained from these records, are confidential and shall not be disclosed in any criminal or civil proceeding except by discovery pursuant to Sections 1043 and 1046 of the Evidence Code. This section shall not apply to investigations or proceedings concerning the conduct of police officers or a police agency conducted by a grand jury, a district attorney's office, or the Attorney General's office.

Cal.Penal Code § 832.7(a) (West's Supp. 1990).

### PROCEEDINGS

On April 19, 1989 Gwillim filed the present action against the defendants. The case was brought as a class action. No class, however, was certified by the district court. Gwillim moved for partial summary judgment; defendants filed a cross-motion for summary judgment. The district court rejected Gwillim's contention that the California statute requiring transmission of his testimony was itself unconstitutional. On June 2, 1989 the district court denied Gwillim's motion and granted the defendants'. Gwillim appeals the judgment of dismissal of his action.

### ANALYSIS

■ The Fifth Amendment to the Constitution of the United States provides that "no person" "shall be compelled in any criminal case to be a witness against himself." The amendment has been held to be incorporated into the Fourteenth Amendment's requirement that no state shall deprive any person of liberty without due process of law. *Malloy v. Hogan*, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). In certain circumstances, however, a person may be compelled to testify against himself if immunity has been conferred upon him. *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). "The constitutional inquiry, rooted in logic and history ... is whether the immunity granted ... is coextensive with the scope of the privilege." *Id.* at 449, 92 S.Ct. at 1659. Although *Kastigar* is directed to a federal immunity statute, neither logic nor history suggest that a different standard should be applied to a state immunity statute. The statute is constitutional if the immunity is coextensive with the scope of the privilege against self-incrimination.

In the context of the use of immunized statements in the criminal case there has been a division among circuits as to what is broadly described as "the non-evidentiary use of immunized testimony." *See United States v. North*, 910 F.2d 843, 856–858, opinion withdrawn and superseded in part on rehearing, 920 F.2d 940 (D.C.Cir.1990). It has been held that access to such testimony by a prosecutor may vitiate a prosecution when the court cannot "escape the conclusion that the testimony could not be wholly obliterated from the prosecutor's mind in his preparation and trial of the case." *United States v. McDaniel*, 482 F.2d 305, 312 (8th Cir.1973). Similarly it has been suggested that "mere access to immunized information may catalyze chains of investigation or subliminally affect decisions to prosecute." *United States v. Pantone*, 634 F.2d 716, 721 (3d Cir.1980). On the other hand, the position has been taken that "a prosecution is not foreclosed merely because the 'immunized testimony might have tangentially influenced the prosecutor's thought processes in preparing the indictment and preparing for trial.'" *United States v. Serrano*, 870 F.2d 1, 17–18 (1st Cir.1989), quoting *United States v. Mariani*, 851 F.2d 595 at 600 (2d Cir.1988), *cert. denied* 490 U.S. 1011, 109 S.Ct. 1654, 104 L.Ed.2d 168 (1989).

■ Use of an immunized statement to refresh the recollection of witnesses has been held to be an evidentiary use of the immunized information. "If the government uses immunized testimony to refresh the recollection of a witness (or to sharpen his memory or focus his thought) when the witness testifies before a grand jury con-

sidering the indictment of a citizen for acts as to which the citizen was forced to testify, then the government clearly has *used* the immunized testimony." *United States v. North*, 910 F.2d at 861 (emphasis in original). Sanderson's use of the testimony to persuade the complaining witness to consent to the prosecution comes close to such an evidentiary use.

We, however, need not and do not decide whether in fact Gwillim's immunity was violated by what Sanderson did. The question before this court is whether transmission of the information was in itself a violation of the constitutional privilege. The law of this circuit is clear that a prosecutor's access to immunized testimony is not a violation of the privilege. *United States v. Crowson*, 828 F.2d 1427, 1431 (9th Cir.1987). A wall between the immunized testimony and the prosecution "would be the equivalent of granting transactional immunity, 'thus negating the plain import of Kastigar.'" *Id.* at 1431–32 quoting *United States v. Byrd*, 765 F.2d 1524, 1531 (11th Cir.1985). The defendants in this case could, therefore, have transmitted the information in accordance with the California statute without violating the Constitution. Gwillim made no showing that the defendants knew that the prosecutor would use the information to motivate the complainant or that the defendants could reasonably have anticipated such use. Under these circumstances it was not their responsibility to assure that Sanderson's use of the information complied with the Constitution.

As no constitutional violation is shown to have occurred on the part of the defendants, the judgment of the district court must be AFFIRMED.