**UNITED STATES of America, Plaintiff,**

v.

**Richard Ray LACEY, Defendant.**

**No. 89–10054–01–SAC.**

United States District Court,
D. Kansas.

July 20, 1993.

James E. Flory, Asst. U.S. Atty., Kansas City, KS, for U.S.

Allan A. Hazlett, Topeka, KS, for defendant.

## MEMORANDUM AND ORDER

CROW, District Judge.

On July 27, 1989, Richard Lacey was indicted by a federal grand jury for conspiracy to distribute cocaine and distribution of cocaine. On February 6, 1990, Lacey failed to appear at trial as ordered; Lacey was tried in absentia. The jury returned a guilty verdict on March 26, 1990. Lacey remained a fugitive until February 1991, when he was apprehended by Federal Marshals. On March 13, 1991, Lacey was sentenced on the instant drug charge and on a failure to appear charge. Lacey appealed to the Tenth Circuit, which affirmed his conviction. *United States v. Lacey*, 969 F.2d 926 (10th Cir. 1992).

On July 28, 1992, Lacey was called before the Grand Jury pursuant to a grant of immunity under 18 U.S.C. § 6001, *et seq.* On October 7, 1992, Lacey filed a petition for

Writ of Certiorari. On February 23, 1993, the Supreme Court vacated the judgment and remanded the case to the Tenth Circuit for further consideration in light of *Crosby v. United States*, 506 U.S. ——, 113 S.Ct. 748, 122 L.Ed.2d 25 (1993).[1] On April 16, 1993, the Tenth Circuit vacated Lacey's conviction and remanded for a new trial. *United States v. Lacey*, 990 F.2d 586 (10th Cir.1993). Trial is set for August 9, 1993.[2]

This case comes before the court upon Lacey's motion to dismiss the pending action against him for the reason that he was granted immunity and that testimony compelled from him while testifying before the grand jury has impermissibly tainted future prosecutions. The motion also requests an evidentiary hearing to determine the extent and existence of tainted evidence prior to trial.

### Defendant's Motion to Dismiss

On July 28, 1992, Lacey was questioned before the grand jury. Lacey's testimony was compelled pursuant to a grant of immunity pursuant to 18 U.S.C. § 6001 *et seq.* The court understands that Lacey's testimony concerned, inter alia, his own involvement in the crimes for which he is currently being tried. The court has not reviewed the grand jury transcript.

Lacey argues that because he has demonstrated that he previously testified before the grand jury, it is incumbent upon the government to demonstrate that its evidence is not tainted and that its evidence comes from a legitimate source. Lacey contends that each witness must be questioned to determine whether their testimony has been tainted by exposure to his immunized testimony. Lacey requests an evidentiary hearing pretrial.

The government responds that this case is unique in that the testimony of each of its witnesses has previously testified against the defendant in his first trial. More importantly, the government argues that none of the witnesses it intends to call have been ex-

1. In *Crosby*, the Supreme Court held that Fed. R.Crim.P. 43 does not permit trial in absentia of a defendant who is absent at the beginning of trial.

2. On July 15, 1993, the court entered an order moving this trial, in the interests of justice, from Wichita, Kansas, to Topeka, Kansas. In that same order, the court permitted Kiehl Rathbun, court-appointed attorney, to withdraw as counsel for the defendant. Alan Hazlett, a Topeka attorney, has accepted the appointment as counsel for the defendant.

posed to the immunized testimony. Only certain DEA personnel have seen the immunized testimony, and none of those witness will testify against Lacey. The government also argues that because each witnesses' version of the facts has been recorded under oath in the first trial, Lacey bears the burden of challenging each witness's testimony. The government contends that a lengthy evidentiary hearing is unnecessary as Lacey has not pointed to any evidence which has been tainted. Moreover, the government argues that Lacey can cross-examine witnesses at trial if discrepancies exist between the testimony given at Lacey's first trial and the instant case.

On June 25, 1993, the court heard oral argument on the pending motion. Having considered the arguments of counsel, the facts and circumstances of this case, and the applicable law, the court is now prepared to rule.

### Use of Immunized Testimony

 The Fifth Amendment to the United States Constitution provides that "No person ... shall be compelled in any criminal case to be a witness against himself ..." The rule against self incrimination has been established in England since 1641. *United States v. North*, 910 F.2d 843, 853 (D.C.Cir.) ("*North I*"), *modified*, 920 F.2d 940 (D.C. 1990) ("*North II*"), *cert. denied*, —— U.S. ——, 111 S.Ct. 2235, 114 L.Ed.2d 477 (1991). The prohibition against compelled testimony is, however, not absolute. In *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), the Court held that a grant of use immunity under 18 U.S.C. § 6002 enables the government to compel a witness's self-incriminating testimony.[3]

Section 6002 provides in pertinent part:

Whenever a witness refuses, on the basis of his privilege against self-incrimination,

to testify or provide other information in a proceeding before or ancillary to—

(1) a court or grand jury of the United States,

. . . . .

and the person presiding over the proceeding communicates to the witness an order issued under this part, the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination; but no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order.

 "The scope of immunity provided by § 6002 is coextensive with the scope of the Fifth Amendment privilege against compelled self-incrimination." *United States v. Poindexter*, 951 F.2d 369, 373 (D.C.Cir.1991) (citing *Kastigar v. United States*, 406 U.S. 441, 462, 92 S.Ct. 1653, 1665, 32 L.Ed.2d 212 (1972)), *cert. denied*, —— U.S. ——, 113 S.Ct. 656, 121 L.Ed.2d 583 (1992). "Testimony obtained pursuant to a grant of statutory use immunity may be used neither directly or derivatively." *Braswell v. United States*, 487 U.S. 99, 117, 108 S.Ct. 2284, 2295, 101 L.Ed.2d 98 (1988). The statute "prohibits the prosecutorial authorities from using the compelled testimony in *any* respect, and it therefore cannot lead to the infliction of criminal penalties on the witness." *Kastigar*, 406 U.S. at 453, 92 S.Ct. at 1661.

"One raising a claim under this statute need only show that he testified under a grant of immunity in order to shift to the government the heavy burden of proving all of the evidence it proposes to use was derived from legitimate independent sources." 406 U.S. at 461–462, 92 S.Ct. at 1665.[4]

---

**3.** Lacey was only given "use" immunity. Transactional immunity is broader than use immunity. To clarify:

Transactional immunity protects an individual against prosecution for anything concerning the substance of compelled testimony. Use immunity, on the other hand, only protects against the government's use of compulsory testimony as a source of evidence, leaving the

government free to use any other evidence to prosecute.
*United States v. Harris*, 973 F.2d 333, 336 (4th Cir.1992).

**4.** "Most courts following *Kastigar* have imposed a 'preponderance of the evidence' evidentiary burden on the government." *North I*, 910 F.2d at 854. *See United States v. Harris*, 973 F.2d 333,

"Even in cases where the Government does not employ the immunized testimony for any purpose—direct or derivative—against the witness, the Government's inability to meet the 'heavy burden' it bears may result in the preclusion of crucial evidence that was obtained legitimately." *Braswell,* 487 U.S. at 117, 108 S.Ct. at 2295.

The D.C. Circuit recently held that a prohibited "use" occurs if a witness's recollection is refreshed by exposure to the defendant's immunized testimony or if his testimony is an any way " 'shaped, altered, or affected,' by such exposure." *Poindexter,* 951 F.2d at 373 (quoting *United States v. North,* 910 F.2d 843, 860–61 (D.C.Cir.) ("*North I* "), *modified,* 920 F.2d 940 (D.C.1990) ("*North II* ")). "*Kastigar* does not prohibit simply 'a whole lot of use,' or 'excessive use,' or 'primary use' of compelled testimony." *Id.* "It prohibits '*any* use, direct or indirect.' " *Kastigar* "is violated whenever the prosecution puts on a witness whose testimony is shaped, directly or indirectly, by compelled testimony, regardless of *how or by whom* he was exposed to that compelled testimony." *North II,* 920 F.2d at 942. *See Harris,* 973 F.2d at 336 ("It is not legitimate for the government to alter its investigatory strategy as a result of the immunized statement.").

A trial court faced with a pretrial motion to dismiss the indictment because of immunity granted by Federal or State Governments has basically four alternative procedures for determining whether or not the prosecution's evidence is tainted: (1) it can hold a pretrial evidentiary hearing; (2) it can hold a taint hearing during the trial as the questioned evidence is offered; (3) it can hold a post-trial hearing to determine the taint; or (4) it can use a combination of these alternatives. *United States v. De Diego,* 511 F.2d 818 (D.C.Cir.1975).[5] *See Harris,* 973 F.2d at 337 (mere representations by the government, without additional evidence insufficient for government to carry its burden).

### Nonevidentiary Use [6]

Nonevidentiary uses of immunized testimony are difficult to summarize.

An initial difficulty is that a precise definition of the term nonevidentiary use is elusive. *See, e.g.,* Humble, 66 Tex.L.Rev. at 353 (defining nonevidentiary uses as "uses that do not furnish a link in the chain of evidence against the defendant"); Strachan, 56 Tex.L.Rev. at 807 (Nonevidentiary use is "use of immunized disclosures that does not culminate directly or indirectly in the presentation of evidence against the immunized person in a subsequent criminal prosecution. This definition is too vague to be very helpful...."). Thus, we follow the lead of other courts and delineate nonevidentiary use by example rather than definition: "One court has described such nonevidentiary use as 'conceivably includ[ing] assistance in focusing the investigation, deciding to initiate prosecution, refusing to plea bargain, interpreting evidence, planning cross-examination, and otherwise generally planning trial strategy.' " *[United States v.] Serrano,* 870 F.2d [1] at 16 [ (1st Cir.1989) ] (quoting *[United States v.] McDaniel,* 482 F.2d [305] at 311 [ (8th Cir.1973) ]. Prosecutorial knowledge of the immunized testimony

336 (4th Cir.1992) (phrase "heavy burden" in *Kastigar* interpreted to require the government to prove by a preponderance of the evidence that the evidence against the defendant was derived from independent sources).

**5.** In *North II,* the D.C. Circuit suggests that a *Kastigar* evidentiary hearing is unnecessary in some instances:
> If the prosecutor were to demonstrate through testimony that a particular witness exposed to the immunized testimony had not been affected by exposure, for example, by showing that the witness had set down his story before exposure, then the burden of going forward would shift to the defendant to challenge that version.

920 F.2d at 944.
 In light of the fact that the Tenth Circuit has apparently not discussed this precise issue, the court, at this time, expresses no opinion upon the D.C. Circuit's suggestion that the burden of proof in a case where the government witness's testimony is "canned" (prior to any potential exposure to the compelled testimony) switches to the defendant.

**6.** This issue was not specifically raised by the defendant, although Lacey's brief refers to the fact that Kim Fowler, the ASUA who was to prosecute this case, may have been aware of the substance of Lacey's compelled testimony.

may help explicate evidence theretofore unintelligible, and it may expose as significant facts once thought irrelevant (or vice versa). Compelled testimony could indicate which witnesses to call, and in what order. Compelled testimony may be helpful in developing opening and closing arguments. *See* Strachan, 56 Tex.L.Rev. at 806–10.

*North I,* 910 F.2d at 857.

The circuits are divided on whether *Kastigar* prohibits nonevidentiary use of immunized testimony. *North I,* 910 F.2d at 857 (collecting cases from circuits considering issue).

In *Harris* the court of appeals commented: The usual precautions, not followed in this case, are for the government to insulate a prosecutor and/or investigator who is familiar with the immunized statement from subsequent prosecution of the compelled witness or to seal the incriminating documents.

As the Eleventh Circuit has stated, "Unless the government relies solely upon evidence obtained prior to the immunized testimony, the principles of *Kastigar* generally require (as a practical matter) a showing that prosecuting officials and their agents were aware of the immunity problem and followed reliable procedures for segregating the immunized testimony and its fruits from officials pursuing any subsequent investigations." *United States v. Hampton,* 775 F.2d 1479, 1490 (11th Cir.1985). As the government acknowledged at oral argument, the Department of Justice recognizes this problem by recommending that prosecution of a compelled witness be handled by an attorney unfamiliar with the substance of the compelled testimony. *See* United States Attorneys' Manual, § 1–11–400 (cited in *United States v. Crowson,* 828 F.2d 1427, 1429 (9th Cir.1987), *cert. denied,* 488 U.S. 831, 109 S.Ct. 87, 102 L.Ed.2d 63 (1988)). It is true that courts have generally declined to erect a *per se* rule requiring withdrawal of a prosecutor or other government official who may have been exposed to immunized testimony, and we

do not erect such a rule here. *See Crowson,* 828 F.2d at 1430; *United States v. Pantone,* 634 F.2d 716, 720 (3d Cir.1980).

973 F.2d at 337.

■ At the June 25, 1993, hearing, the court asked the Assistant United States Attorney if there was a Department of Justice policy concerning her continued prosecution of this case in light of the fact she was present, and therefore exposed to, Lacey's compelled testimony before the grand jury. The Assistant United States Attorney indicated that she was uncertain about the Department of Justice policy, but indicated that she would determine whether such a policy existed.

Since the June 25, 1993, hearing, the government has filed a motion to conduct a *Kastigar* hearing pretrial, so as to avoid delays during the trial itself. In that motion, the government indicates that another prosecutor, wholly unfamiliar with the case, will try this case.

It therefore appears that the court's concerns about "nonevidentiary use" of Lacey's compelled testimony are adequately addressed by the substitution of counsel unfamiliar with the case.

### Analysis

The case at bar is unique in that the testimony of each of the government's witnesses is preserved from the first trial—any deviation from the testimony presented at the first trial (particularly any testimony changed to conform to Lacey's compelled testimony) will presumably be identifiable. At present there is no indication that any of the government's witnesses have been exposed to the defendant's immunized testimony. Based upon the unique circumstances of this case, the court, at this time, denies the defendant's motion to dismiss.

The court will, however, hold a *Kastigar* hearing at some point in time. As indicated above, the court may hold a *Kastigar* hearing at virtually any time. In this case, the court anticipates conducting a *Kastigar* hearing pretrial.[7] If during the *Kastigar* hearing it

---

**7.** Although the government indicates that a pretrial *Kastigar* hearing will be most expeditious,

certain problems, such as the availability of witnesses pretrial or the expense associated with

appears that any of the government's witnesses have been exposed to Lacey's compelled testimony, the court will fashion an appropriate remedy at that time.

IT IS THEREFORE ORDERED that the defendant's motion to dismiss (Dk. 388) is denied.

subpoenaing witness both before and during trial, may necessitate the need to conduct some of the *Kastigar* hearing during trial. As new counsel for both the prosecution and the defendant have recently entered their appearances, the court will reserve ruling on the appropriate timing of the *Kastigar* hearing until counsel have had an opportunity to discuss this issue.