702 P.2d 985

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**David MUNOZ, Defendant-Appellant.**

**No. 15138.**

Supreme Court of New Mexico.

July 8, 1985.

Leon Taylor, Philip C. Gaddy, Albuquerque, for defendant-appellant.

Paul Bardacke, Atty. Gen., William Lazar, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

RIORDAN, Justice.

David Munoz (defendant) was convicted of first-degree felony murder and attempted robbery. Defendant was sentenced to life imprisonment for the murder and eighteen months for the attempted robbery. Defendant appeals his convictions. We reverse.

Defendant raises four issues on appeal. Because one of the issues is dispositive, we find it unnecessary to address the remaining three. The issue we address is whether the trial court erred in allowing defendant's trial to continue over defendant's objection to the State's use of defendant's prior immunized testimony.

Defendant and Richard Montoya (Montoya) were sought for questioning in the murder of a Las Cruces undercover agent. After turning himself in to police, defendant gave four statements to investigating police officers. Three of those statements were exculpatory. The fourth statement implicated defendant and Montoya in the murder and robbery. Defendant and Montoya were subsequently indicted on counts of murder and armed robbery. The two were tried separately, with Montoya being tried first.[1]

Defendant was compelled to testify (immunized testimony) under a grant of use immunity at Montoya's trial. During his immunized testimony, defendant's previous statements to investigating officers were admitted into evidence, and defendant asserted, *for the first time*, that the investigating officers had coerced him into making the fourth (inculpatory) statement. The three investigating officers that were present when defendant made the four statements prior to his indictment were also present in the courtroom during defendant's immunized testimony. These three officers later appeared and testified for the State at defendant's trial.

The same district attorney prosecuted both Montoya and defendant. Prior to defendant's trial, the district attorney filed a motion to "impeach defendant's claim of coercion" on the ground that such claim had not been asserted at an earlier suppression hearing.[2] The district attorney also instructed one of the investigating officers to time defendant's prior statements to police, apparently to determine the time interval involved in the statement process in which the alleged coercion occurred. Furthermore, the district attorney requested and reviewed a transcript of defendant's immunized testimony in preparation for de-

---

1. Montoya's conviction was affirmed by this Court. *State v. Montoya,* 101 N.M. 424, 684 P.2d 510 (1984).

2. Defendant's motion to suppress on other grounds had been heard prior to Montoya's trial and denied.

fendant's trial. Despite all of these facts, and over numerous objections by defense counsel before and during trial, defendant's trial was allowed to continue.

On appeal, defendant argues that the district attorney's actions show an unconstitutional use of defendant's immunized testimony. Defendant further argues that the state failed to meet its heavy burden of proving that the evidence presented against defendant was untainted by defendant's immunized testimony. We agree.

It has been held that a grant of immunity should leave the witness and the prosecuting authorities "in substantially the same position as if the witness had claimed his [Fifth Amendment] privilege." *Murphy v. Waterfront Commission*, 378 U.S. 52, 79, 84 S.Ct. 1594, 1609, 12 L.Ed.2d 678 (1964). Thus:

> [A] grant of immunity must afford protection commensurate with that afforded by the [Fifth Amendment] privilege * * Immunity from the use of compelled testimony [use immunity], as well as evidence derived directly and indirectly therefrom, affords this protection. It prohibits the prosecutorial authorities from using the compelled testimony in *any* respect, and it therefore insures that the testimony cannot lead to the infliction of criminal penalties on the witness.

*Kastigar v. United States*, 406 U.S. 441, 453, 92 S.Ct. 1653, 1661, 32 L.Ed.2d 212 (1972) (emphasis in original).

 A witness that has been accorded use immunity and that is subsequently prosecuted for offenses revealed during such immunized testimony "is not dependent for the preservation of his rights upon the integrity and good faith of the prosecuting authorities." *Id.* at 460, 92 S.Ct. at 1664; *Kastigar* requires that a defendant only show that he has testified under a grant of immunity. The prosecuting authorities then "have the burden of showing that their evidence is not tainted [by exposure to prior immunized testimony] by establishing that they had an independent, legitimate source for the disputed evi-

dence." *Id.* (quoting *Murphy v. Waterfront Commission*, 378 U.S. at 79 n. 18, 84 S.Ct. at 1609 n. 18). It is not enough that the prosecuting authorities simply negate the existence of taint in order to meet this burden. Instead, the prosecution has "the affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony." *Id.*

Various lower United States court decisions have addressed the *Kastigar* prohibitions on the use of prior immunized testimony. In *United States v. McDaniel*, 482 F.2d 305 (8th Cir.1973), McDaniel had been extended complete immunity from state prosecution upon appearing before a state grand jury. Sometime after McDaniel's state grand jury appearance, the United States Attorney requested and reviewed a copy of McDaniel's testimony, not realizing that such testimony was immunized. Shortly thereafter, McDaniel was indicted on federal charges. McDaniel was subsequently convicted and appealed his conviction. On appeal, McDaniel asserted that under the circumstances, it would be impossible for the prosecution to meet the heavy burden of proof required under *Kastigar*. The *McDaniel* Court found that, despite the fact that voluminous F.B.I. reports received by the United States Attorney prior to McDaniel's immunized state grand jury testimony may have provided proof of an independent source for the government's case against McDaniel, such reports:

> nevertheless fail[ed] to satisfy the government's burden of proving that the United States Attorney, who admittedly read McDaniel's grand jury testimony prior to the indictments, did not use it in some significant way short of introducing tainted evidence. Such use could conceivably include assistance in focusing the investigation, deciding to initiate prosecution, refusing to plea-bargain, interpreting evidence, planning cross-examination, and otherwise generally planning trial strategy.

*Kastigar*, after all, proscribed "*any* use, direct or indirect * * * *" And,

indeed, if the immunity protection is to be coextensive with the Fifth Amendment privilege, as it must to be constitutionally sufficient, then it must forbid all prosecutorial use of the testimony, not merely that which results in the presentation of evidence before the jury.

*McDaniel,* 482 F.2d at 311 (emphasis added; citations omitted). The *McDaniel* Court held that under these circumstances, the government could not meet its heavy burden of proof required by *Kastigar:*

> [O]nce the subject matter was touched upon in the [immunized] testimony, and the prosecutor had read it, he could have used it in a variety of ways * * * * The possibility of such use, and *the impossibility of clearly showing that the use did not occur* calls for the holding in this case that the defendants were denied the constitutional protection that their silence would have given them.

*Id.* (emphasis added) (quoting *U.S. v. Dornau,* 359 F.Supp. 684, 687 (S.D.N.Y.1973)). The *McDaniel* Court concluded that since the trial court obviously failed to consider "the immeasurable subjective effect" on the prosecutor after reading McDaniel's immunized testimony, the trial court's finding that the government had met its *Kastigar* burden was incorrect. *Id.* at 312.

Another case analogous to the instant case is *United States v. Semkiw,* 712 F.2d 891 (3rd Cir.1983). Semkiw was granted use immunity and compelled to testify before a grand jury regarding a crime for which he was later indicted. Semkiw's contention on appeal was that the prosecuting attorney used Semkiw's grand jury testimony as a discovery deposition and therefore violated Semkiw's Fifth Amendment privilege against self-incrimination. The government did not deny that the prosecuting attorney was familiar with Semkiw's immunized grand jury testimony and stipulated that the prosecuting attorney had "access" to such testimony. Under these facts, the *Semkiw* Court reasoned that since it was undisputed that the government had all of its evidence against Semkiw prior to Semkiw's immunized testimony,

it could be inferred that the government intended to use Semkiw's immunized testimony to its own advantage in the case against Semkiw. The *Semkiw* Court further stated:

> The possibility that the government compromised [Semkiw's] immunity is heightened by the fact that it assigned the trial to an attorney who had "access" to the compelled testimony. It is no answer for the prosecution to say, as it does on this appeal, that [Semkiw] did not prove that the trial attorney learned his defense from the testimony. The burden of proof at the hearing on this issue rested with the government, not [Semkiw].

*Id.* at 895. The *Semkiw* Court stated that the government could "easily have removed any cloud from the trial by assigning it to another attorney who did not and would not review [Semkiw's] immunized testimony." *Id.* Semkiw's case was remanded to the district court for a determination on the extent of "access" the prosecuting attorney had to Semkiw's immunized testimony and what use may have been made of it.

It is our determination that *McDaniel* controls the instant case. Like the prosecuting authorities in *McDaniel,* the district attorney who prosecuted defendant not only had "access" to defendant's immunized testimony, but in fact elicited such testimony from defendant at Montoya's trial and reviewed that testimony prior to presentation of the State's case against defendant. This same district attorney also made pretrial motions specifically referring to subjects that were only revealed in defendant's immunized testimony. The trial court in fact admonished the district attorney for "anticipating" such subjects before trial.

Unlike the situation in *Semkiw,* where it was necessary to remand the case for a determination on the extent of the prosecution's "access" to immunized testimony, in the instant case, it is undisputed that the district attorney not only had "access" to defendant's immunized testimony, but

heard defendant's original immunized testimony when it was given and read a transcript of that testimony prior to defendant's trial. Thus:

> Human frailties being as they are, * * it is nigh impossible, after having read the [immunized] testimony, to conduct a completely separate investigation and to separate what was learned from the [immunized] testimony from what was not.

*United States v. Rice,* 421 F.Supp. 871, 877 (E.D.Ill.1976).

The State argues that its heavy burden of proof was met and likens the instant case to *United States v. Pantone,* 634 F.2d 716 (3rd Cir.1980). However, that case is distinguishable from the instant case and the authorities on which we rely.

In *Pantone,* it was found that there was no *Kastigar* violation. However, under the facts in *Pantone,* the prosecution's exposure to defendant's immunized testimony came *after* defendant's first trial and before retrial. At the hearing on the matter, the prosecution assured the court that its case on retrial would mirror the first trial. Under these circumstances, the two trial transcripts could be compared to insure nonuse of defendant's immunized testimony. Further, defendant's immunized testimony dealt with only an analogous incident not directly related to those matters for which he was going to be retried. However, under *McDaniel* and the instant case, the immunized testimony dealt with the same criminal transactions for which the defendants were being tried. Another factor distinguishing *Pantone* is that the immunized testimony given in *Pantone* did not reveal any new or beneficial information to the prosecution. That is not the situation in the instant case. Defendant's immunized testimony revealed, *for the first time,* his defense of coercion.

Another case cited by the State in which the heavy *Kastigar* burden was met is *United States v. Romano,* 583 F.2d 1 (1st Cir.1978). However, that case is also distinguishable from the instant case. There, the government successfully proved its independent sources of evidence against Romano by showing that all the prosecuting staff and investigators had prior notice to "avoid all access or contact with any reports, personal or journalistic" of Romano's immunized testimony. *Id.* at 5. This directive to avoid Romano's immunized testimony was complied with by all involved in the prosecution of Romano as evidenced by various testimony and affidavits. However, in the instant case, no such attempts to insulate were made by the prosecuting authorities. Instead, the same district attorney that elicited defendant's immunized testimony proceeded to prosecute defendant, review that immunized testimony prior to defendant's trial, and make pretrial motions based on that immunized testimony.

██ Thus, the conclusion is inescapable that the district attorney was not insulated from defendant's immunized testimony. The State and the defendant were not in "substantially the same position" as if defendant had retained the right to remain silent. *Murphy v. Waterfront Commission,* 378 U.S. at 79, 84 S.Ct. at 1609. Under the circumstances of this case, it is our determination that the State did not and cannot meet its burden of disproving taint and showing an independent source for its evidence. We must therefore reverse defendant's convictions. We do not know what evidence the State has against the defendant that may be used in a new trial. However, the district attorney, who has already made use of the information learned during defendant's immunized testimony, may not participate in any way if there is a new trial. Similarly, any State witnesses (and particularly the three police officers who were present during defendant's immunized testimony) are prohibited from testifying or participating in any further investigation or preparation of a new trial with respect to anything that was revealed to the State for the first time during defendant's immunized testimony.

██ The prosecution faces a very important decision when it chooses to immunize a witness, especially when criminal charges may be or have been brought against that witness. We therefore caution that cases

involving defendants who have given immunized testimony should be handled carefully in light of the State's heavy burden dictated by *Kastigar.* A different district attorney than the one who elicits immunized testimony should always handle the prosecution of a defendant who has given such immunized testimony and steps should always be taken to fully insulate such district attorney and staff. Further, steps should be taken to insure that key witnesses will not be exposed to immunized testimony. These precautions are required in all such cases because:

> [I]t is the government's heavy burden to prove the negative in [these] case[s]; *i.e.,* that none of its evidence suffers from taint. The government might find this to be an unreasonable or impossible burden. The government must however recognize that it, in its sole discretion, determines to whom it will grant immunity in order to convict others. The government must recognize that where it grants immunity, it runs the grave risk that any future prosecution of such an immunized witness for past or continuing crimes may, as a practical matter, be impossible, irrespective of whether the prosecutors who grant such immunity know or have any reason to know or suspect the witness of such other crime or crimes.

*United States v. Hossbach,* 518 F.Supp. 759, 773 (E.D.Pa.1980).

Defendant's convictions are reversed.

IT IS SO ORDERED.

FEDERICI, C.J., WALTERS, J., and SOSA, Senior Justice, concur.

STOWERS, J., specially concurs.

STOWERS, Justice, specially concurring.

I concur with the majority opinion that the government failed to meet its burden of proving that the district attorney, who was present at the time defendant gave his immunized testimony and who admittedly read a transcript of the immunized testimony prior to defendant's trial, did not use the immunized testimony in some significant way short of introducing tainted evidence.

I am concerned, however, with the treatment relating to witness testimony. The test for the admission of witnesses as it relates to immunized testimony is different and should be clearly spelled out. According to *United States v. McDonnel,* 550 F.2d 1010 (5th Cir.1977) and *United States v. Rogers,* 722 F.2d 557 (9th Cir.1983), a witness who was present during a defendant's immunized testimony may testify, so long as his testimony is based on other sources besides defendant's immunized testimony. Therefore, if the government can prove by a preponderance of the evidence that the testimony of the three police officers will be based on information independent of defendant's immunized testimony, then their testimony would be admissible in a retrial of defendant.