817 P.2d 1186

**STATE of New Mexico,**
**Plaintiff–Appellee,**

v.

**Raymond L. GONZALES, a/k/a Loco**
**a/k/a Mario a/k/a Joseph,**
**Defendant–Appellant.**

No. 18955.

Supreme Court of New Mexico.

Aug. 19, 1991.

Rehearing Denied Oct. 3, 1991.

Tom Udall, Atty. Gen., Margaret B. Alcock, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Gary C. Mitchell, P.C., Gary C. Mitchell, Ruidoso, Michael Slosberg, Albuquerque, for defendant-appellant.

## OPINION

SOSA, Chief Justice.

Defendant, Raymond L. Gonzales, appeals his 1989 convictions of felony murder and armed robbery. He was sentenced to nine years on the robbery conviction to run concurrent with life imprisonment on the murder conviction. Defendant alleges error concerning jury selection, admission and exclusion of certain evidence, and jury instructions, and raises other issues of alleged prosecutorial misconduct, improper communication by one juror, whether a taint hearing should have been held, and whether reversible cumulative error occurred. We affirm.

Toby Grogg and Kathy Chavez were stabbed to death in December 1987. Defendant and Richard M. Ortega were arrested for the killings, indicted on counts of murder, kidnapping, robbery, and conspiracy, and were tried separately with Ortega being tried first.[1] Defendant testified in Ortega's 1988 trial under a grant of use and derivative use immunity pursuant to SCRA 1986, 5–116 and 11–412. The immunity agreement provided that defendant would be charged only with felony murder and armed robbery of Toby Grogg. Defendant admitted he was present when victim Grogg was killed, but maintained he was an innocent bystander and did not participate. According to defendant, Ortega solely was responsible for the robbery and murder of both victims. The state argued the impossibility of Ortega committing both murders without defendant's assistance.

Defendant's June 1989 trial resulted in a mistrial because certain tape-recorded interviews with witnesses were provided to the defense on the eve of the trial. A second jury trial began in November with a verdict entered on November 21, 1989, and an amended judgment and sentence filed

---

1. At the time of filing this opinion the case of *State v. Ortega*, 112 N.M. 554, 817 P.2d 1196 (1991), was pending before this court.

December 15, 1989. On appeal, defendant alleges the following errors:

(1) the district court erred in not holding a taint hearing prior to defendant's trial;

(2) defendant was denied a fair and impartial jury by the manner in which the venire and jury were selected;

(3) defendant was denied a fair trial due to prosecutorial misconduct in voir dire and closing argument;

(4) the district court erred by admitting defendant's testimony concerning his probation on an unrelated charge, the video deposition of witness Chavez, statements concerning threats by Ortega against witness Chavez, and evidence and argument concerning victim Chavez, which unfairly prejudiced defendant and denied him a fair trial;

(5) the district court erred in excluding evidence of threats against defendant's life made by Ortega and a prior inconsistent statement by witness Casaus;

(6) the district court erred in giving vague and unconstitutional jury instructions regarding aiding and abetting;

(7) defendant was denied a fair trial due to improper contact between the court and a deliberating juror; and,

(8) cumulative error deprived defendant of a fair trial. We address defendant's claims of error seriatim.

## TAINT HEARING

■ Defendant claims fundamental error occurred by the court's failure to sua sponte order a taint hearing to determine if the state's evidence derived from sources independent of his immunized testimony given in Ortega's trial and at a pretrial deposition. Defendant argues the prosecution reviewed exhibits from Ortega's trial that included those testified to by defendant, and complains the record lacks certification by the state of its independent sources of its evidence. This issue is raised for the first time on appeal. *See State v. Jaramillo*, 85 N.M. 19, 508 P.2d 1316 (Ct.App.) (fundamental error doctrine allows court to reach questions that were not preserved properly for appeal in order to prevent miscarriage of justice when defendant has been deprived of rights essential to the defense), *cert. denied*, 85 N.M. 5, 508 P.2d 1302, *cert. denied*, 414 U.S. 1000, 94 S.Ct. 353, 38 L.Ed.2d 236 (1973).

*Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), is the seminal case addressing the prohibition on prosecutors from using immunized testimony in any respect, direct or indirect, which may lead to the infliction of criminal penalties on the witness. "*Kastigar* requires that a defendant only show that he has testified under a grant of immunity. The prosecuting authorities then 'have the burden of showing that their evidence is not tainted [by exposure to prior immunized testimony] by establishing that they had an independent, legitimate source for the disputed evidence." *State v. Munoz*, 103 N.M. 40, 42, 702 P.2d 985, 987 (1985) (quoting *Kastigar*, 406 U.S. at 460, 92 S.Ct. at 1665); *Murphy v. Waterfront Comm'n*, 378 U.S. 52, 79, 84 S.Ct. 1594, 1609–10, 12 L.Ed.2d 678 (1964) (defendant must demonstrate he testified under a grant of immunity before burden shifts to prosecution).

One raising a claim under [the immunity] statute need only show that he testified under a grant of immunity in order to shift to the government the heavy burden of proving that all of the evidence it proposes to use was derived from legitimate independent sources.

*Kastigar*, 406 U.S. at 461–62, 92 S.Ct. at 1665.

It is uncontroverted that defendant, either before, during or after trial, failed to alert the court of his concern that the prosecution's evidence might have been derived from his immunized testimony given in Ortega's trial, nor did he object or question the source of the prosecution's evidence to adduce that it was untainted by his immunized testimony. Nevertheless, despite the lack of a *Kastigar* hearing, precautions were in place to avoid possible taint arising from defendant's immunized testimony. Two special prosecutors from the Fifth Judicial District, who had no connection to the Ortega trial, were appointed to try defendant's case. *See Munoz*, 103 N.M. at 45,

702 P.2d at 990 (different prosecutor than one who elicits immunized testimony should handle prosecution of person who gave immunized testimony; steps should be taken to insulate such prosecutor and staff from exposure to immunized testimony); *see generally* 22 C.J.S. *Criminal Law* § 79 (1989). Further, the record indicates that a pretrial conference was held after jury selection wherein the defense attorney, prosecutors, and trial judge recognized that defendant's immunized testimony could not be used in his trial. During the discussions, prosecutor Plath expressed concern with "Defendant's use of the fact that he testified against Mr. Ortega to his own benefit in this case, in this trial." Defense counsel stated, and all agreed, that "[i]t's clear it [defendant's immunized testimony] shall not be used."

Unlike the cases cited by defendant wherein the prosecuting authorities had reviewed the immunized testimony, the record in the instant case suggests no knowledge by the prosecutors of the substance of defendant's immunized testimony, nor that they had access to it or reviewed it. In fact, after Ortega's November 1988 trial, the transcript of proceedings in his trial were not designated for appeal until April 1989, and were received in the supreme court on November 16, 1989. Jury selection in defendant's second trial took place on November 13 with his trial commencing the next day.

Absent defendant's failure to raise this issue in the trial court or question the source of the prosecution's evidence, we find no error in the court's failure to hold a taint hearing, and, thus, no fundamental error. "The doctrine of fundamental error is one to be applied only under exceptional circumstances and solely to prevent a miscarriage of justice." *State v. Escamilla,* 107 N.M. 510, 515, 760 P.2d 1276, 1281 (1988).

JURY SELECTION

 Defendant objected to the jury selection from only lists of registered voters. He alleges this method is contrary to the 1989 amended provisions of NMSA 1978, Section 38–5–3 (Cum.Supp.1990), and asks this court to reconsider its opinion in *State ex rel. Stratton v. Serna,* 109 N.M. 1, 780 P.2d 1148 (1989). He further disputes that registered voters comprise an accurate cross-section of the community and that the jury selection process denied him his rights to a fair and impartial jury, equal protection, and due process.

Although the amendment of Subsection A in Section 38–5–3, which enlarged the jury selection pool by adding driver's license holders, took effect on June 16, 1989, it contained no language invalidating the existing jury pools as renewal of the pool lists would not take place until ninety days following the next general election. *Id.* at 3, 780 P.2d at 1150. The first general election following the amendment was held in November 1990, one year after defendant's trial. The *Serna* court reasoned that the legislature did not intend immediate implementation, but that jury pool selection would continue to be renewed ninety days after every general election. *Id.* The court held that, until the next general election, jury selection using lists of registered voters continued to be a valid method from which to select a jury pool. *Id.* at 4, 780 P.2d at 1151. The legislature's intent to wait until after the 1990 general election to enlarge the jury pool to include nonvoting citizens with driver's license is not inconsistent with defendant's constitutional rights.

The issue raised by defendant that registered voters alone do not represent a fair cross-section of the community was addressed in *State v. Lopez,* 96 N.M. 456, 631 P.2d 1324 (Ct.App.1981). The court, quoting *United States v. Coats,* 611 F.2d 37 (4th Cir.1979), held that before one's constitutional rights are violated, a defendant must demonstrate that a cognizable or distinctive group has been systematically excluded or substantially underrepresented. 96 N.M. at 460, 631 P.2d at 1328. In order to establish that excluded persons comprise a distinct or cognizable group in the community, a defendant must show:

(1) the presence of some quality or attribute which "defines and limits" the group; (2) a cohesiveness of "attitudes

or ideas or experience" which distinguishes the group from the general social milieu; and (3) a "community of interest" which may not be represented by other segments of society.

*Id.* at 459, 631 P.2d at 1327 (quoting *United States v. Test,* 550 F.2d 577 (10th Cir. 1976)). Moreover, in *Duren v. Missouri,* 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979), the Supreme Court held that to establish a prima facie violation of the fair cross-section requirement,

> the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Id.* at 364, 99 S.Ct. at 668. Accordingly, defendant's claim must fail since he failed to satisfy his burden of establishing that registered voters in Bernalillo County do not represent a fair cross section of the community.

## VOIR DIRE

 Defendant also claims the trial court abused its discretion in denying his motion to continue voir dire so he could have additional time to review supplemental jury questionnaires. He also submits he was prejudiced because voir dire was conducted with a group of seventy-nine people during a three-hour period instead of smaller groups over a longer period of time, thus denying him his rights to effective assistance of counsel and a fair trial.

We find no abuse by the court in denying defendant's motion for continuance. *See State v. Smith,* 92 N.M. 533, 537, 591 P.2d 664, 668 (1979) (standard of review on denial of motion for continuance is whether trial court abused its discretion to the prejudice or injury of defendant). The record indicates the short amount of time to review the questionnaires was attributable to

defendant's delay in preparing the questionnaire and bringing it before the court for its approval. Defendant first raised the issue of an additional questionnaire in a telephone hearing two months before the trial began with the court setting a deadline for submission of the questionnaire. Defendant failed to meet the deadline and filed a motion to allow the questionnaire to be given to the venire two weeks before trial was scheduled to begin. The court granted the motion three days later. The court's action cannot be characterized as unfair, arbitrary, or as manifest error. *See State v. Kincheloe,* 87 N.M. 34, 36, 528 P.2d 893, 895 (Ct.App.1974) (to establish abuse of discretion it must appear that court acted unfairly, arbitrarily or committed manifest error).

Regarding defendant's other allegations, the record contains no indication that he requested to either voir dire the venire in small groups or extend the time in which to conduct voir dire. Moreover, before voir dire began the trial court explained to counsel that individual voir dire would be allowed if necessary. Thus, the record reveals no abuse of discretion by the court in the manner voir dire was conducted. *See State v. Martinez,* 99 N.M. 353, 357, 658 P.2d 428, 432 (1983) (extent of voir dire left to sound discretion of trial court and limited only by essential demands of fairness).

## CONDUCT OF THE PROSECUTOR [2]

Defendant claims the court erred in failing to grant any of his motions for mistrial, which were based upon certain remarks by the prosecutor during voir dire, cross-examination, and closing argument, and alleged to have deprived him of a fair trial. Defendant's claimed support in *Mahorney v. Wallman,* 917 F.2d 469 (10th Cir.1990), is misplaced in that *Mahorney* is a federal habeas corpus proceeding. In New Mexico, the granting of a mistrial lies within the discretion of the trial court and review is for abuse of that discretion. *State v. Perez,* 95 N.M. 262, 265, 620 P.2d 1287, 1290

---

**2.** With regard to the brief in chief on this point, we admonish defense counsel to follow carefully the rules of appellate procedure regarding citation to the record proper and transcript of proceedings. *See* SCRA 1986, 12–213(A)(3).

(1980). We address defendant's individual allegations as follows.

■ 1. During voir dire, a discussion developed on the standard of proof required by the jury to find defendant guilty. The prosecutor, responding to a juror's comment, attempted to distinguish reasonable doubt and possible doubt by stating:

> The law presumes the Defendant to be innocent unless and until you're satisfied beyond a reasonable doubt of his guilt. The burden is always on the State to prove guilt beyond a reasonable doubt. It is not required that the State prove guilt beyond all possible doubt. The test is one of reasonable doubt.

Defendant claims the prosecutor's remarks were misleading and confused the jury by suggesting "that the jury could convict Defendant even if they had doubts about the case."

The prosecutor's remarks parallel the language of our jury instruction on presumption of innocence, reasonable doubt, and burden of proof, which was given as Instruction No. 2. *See* SCRA 1986, 14–5060. During one of several bench conferences held shortly thereafter, the court advised the prosecutor to go no further so as to not get "into the area of instructing the jury [as] that's the Court's job." The court believed the jury was not confused, and reminded defense counsel that he would have an opportunity to address any questions presented by the jury on the issue of reasonable doubt. The discussion concluded with the state asking if any member of the venire felt as if they could not follow the particular instruction. The court's action in controlling this portion of voir dire and in denying defendant's motion for mistrial was not an abuse of discretion.

■ 2. Defendant claims the state attempted to shift the burden of proof during closing argument when the prosecutor stated that if the jury believed beyond reasonable doubt that defendant was only a bystander, they should find him not guilty. No objection was made, however, nor was the statement claimed as the basis for any of defendant's motions for mistrial. Unless a prosecutor's remark constitutes fundamental error, review by an appellate court must be predicated upon a timely objection by a defendant. *See State v. McGuire*, 110 N.M. 304, 313, 795 P.2d 996, 1005 (1990). Here, we find the comment fails to rise to a level of fundamental error. At most, the comment was a harmless misstatement of the law in light of the overwhelming evidence against defendant. *See State v. Hoxsie*, 101 N.M. 7, 10, 677 P.2d 620, 623 (1984) (although substantial evidence may exist to support the verdict, prosecutorial misconduct cannot be deemed harmless unless the evidence is so overwhelming that there is no reasonable probability that the misconduct contributed to the conviction).

■ 3. Defendant objected to the state's comment during the rebuttal portion of its closing argument, on defendant's failure to call specific witnesses to testify. Defendant alleged the state improperly commented on his right to call witnesses, and made this claim the subject of one of his motions for mistrial. Defendant further contends that because the comment came in during the state's rebuttal, defendant was deprived of the opportunity to address it with the jury.

Comment during closing argument concerning the failure to call a witness is permitted. *State v. Vallejos*, 98 N.M. 798, 653 P.2d 174 (Ct.App.), *cert. denied*, 99 N.M. 47, 653 P.2d 878 (1982). It is for the jury to estimate the value of an attorney's argument, thus counsel should be allowed considerable latitude of speech so long as extraneous facts are not injected or improper language used. *State v. Ennis*, 99 N.M. 117, 120, 654 P.2d 570, 573 (Ct.App.), *cert. denied*, 99 N.M. 148, 655 P.2d 160 (1982). The state's remarks were a permissible response to defendant's closing argument and no error was committed.

■ 4. Defendant claims he was unfairly prejudiced by the state's references to witness Chavez as defendant's "puppet" and witnesses Chavez and Casaus as his "running buddies", and the comments regarding Chavez's memory loss on the witness stand. No objections were made to

these comments at trial, nor do they rise to the level of fundamental error. *See Escamilla,* 107 N.M. at 516, 760 P.2d at 1282 (doctrine of fundamental error applied to excuse failure to make proper objection below only if innocence of defendant appears indisputable or if question of guilt is so doubtful that it would shock conscience to permit conviction to stand). Accordingly, we find no merit to defendant's contention.

█ 5. Defendant objected to references made about Kathy Chavez and the manner of her death during closing argument. The curative instruction given by the trial court that argument of the attorneys is not evidence was sufficient to cure any prejudice from the remarks under these circumstances. *See State v. Simonson,* 100 N.M. 297, 669 P.2d 1092 (1983). Moreover, the trial court's ruling on the relevancy of the evidence regarding Kathy Chavez, excluding all photographs of her body, was proper in light of the impossibility of separation of the evidence of one victim's death from that of the other. Defendant was able to present his theory that, although he was present when victim Grogg was killed, he did not participate in the murder. In order for the state to establish its case—that it was impossible for Ortega to have committed the murders without defendant's assistance—the state was permitted to introduce evidence of each victim's physical size and strength as well as the circumstances surrounding the events. Given the theories of the prosecution and defense, the trial court did not abuse its discretion in admitting this evidence.

█ 6. During cross examination, the prosecutor questioned defendant regarding his probation, which stemmed from an unrelated charge. The prosecutor stated that the purpose behind the questioning was to show a motive for defendant's desire to leave the state, an issue first brought up on direct examination when defendant was asked if he wanted to go to California. Defense counsel's objection to questions concerning revocation of the probation was sustained, with the court limiting questions to issues of behavior and conditions of probation. Defendant's claim that he was prejudiced by this line of questioning is without merit.

## ADMISSION OF EVIDENCE

█ Defendant claims as error the admission of witness Raymond Chavez's videotaped deposition, contending the statements made during the deposition were redundant in light of the witness's testimony at trial, and allowed the state two opportunities to inject the same incriminating statements against defendant. The court admitted the video deposition as a prior inconsistent statement under SCRA 1986, 11–801(D)(1)(a) and as former testimony of a declarant who is unavailable as a witness under SCRA 1986, 11–804(B)(1). Regarding the second basis, the court found the witness's lack of memory made him unavailable to testify. A review of the witness's testimony supports the court's ruling—the witness repeatedly stated he could not remember events and details about which he previously testified during the deposition. Accordingly, we find no abuse of discretion by the court in admitting the video deposition of Raymond Chavez.

█ Next, defendant challenged the introduction of evidence concerning victim Chavez, claiming it was more prejudicial than probative and denied him the right to a fair trial. He also alleges that any evidence relating to victim Chavez was irrelevant since he was not charged with committing any crime against her. As stated above, in light of the state's theory, it was permissible to introduce evidence of the circumstances surrounding the crimes, which could include evidence of the victim's size, strength, and injuries. The court did not abuse its discretion in admitting evidence on victim Chavez.

## EXCLUSION OF EVIDENCE

█ Defendant alleges abuse of discretion by the court in excluding the following evidence: (1) Testimony by witness Chavez regarding an encounter with Deputy Mares, which was excluded as hearsay. Defendant claims that the failure of Depu-

ty Mares to testify at trial was immaterial and that the proffered statements were admissions by a party opponent, the state, and should have been admitted under SCRA 1986, 11–801(D)(2) (hearsay exception for admission by party-opponent). (2) Testimony by corrections officers that Ortega made threats to them and Gonzales. Defendant claims that his fear of Ortega made more probable his claim that he was afraid to intervene to help the victims and cooperate with law enforcement officials during its investigation of the crimes. Defendant alleges the court abused its discretion in excluding the evidence, which had the effect of forcing him to convince the jury solely on his own testimony. (3) Testimony by witness Aragon concerning statements made by witness Casaus were excluded as hearsay. The state's objection was sustained because Casaus was not asked by the defense if he had made the statement, thus depriving him of the opportunity to admit, deny or explain pursuant to SCRA 1986, 11–613(B) (extrinsic evidence or prior inconsistent statement of witness). It is claimed that if permitted to answer Aragon would have testified that Casaus told him defendant had nothing to do with the killings. Defendant maintains the statement was offered not for its truth but to impeach Casaus, and should have been admitted in the interest of justice. Defendant contends the state could have put Casaus back on the stand during its rebuttal case and that the court abused its discretion in excluding Aragon's testimony in this regard.

For the court's error in excluding evidence to be prejudicial against defendant, improperly refused evidence must form an important part of defendant's case. *State v. Chambers*, 103 N.M. 784, 787, 714 P.2d 588, 591 (Ct.App.1986). Moreover, to warrant reversible error in the exclusion of testimony, defendant must show a reasonable probability that the court's failure to allow the testimony contributed to his conviction. *State v. Garcia*, 100 N.M. 120, 123, 666 P.2d 1267, 1270 (Ct.App), *cert. denied*, 100 N.M. 192, 668 P.2d 308 (1983). We find all of defendant's contentions to be without merit for the following reasons.

First, the record demonstrates that defendant was not prevented from presenting evidence of Chavez's account of his encounters with Deputy Mares. Regarding the testimony of the corrections officers, the trial court found that any threats made by Ortega had no relevance to defendant's state of mind at the time of the murders or during the investigation. In addition, the court properly excluded Aragon's testimony, ruling that defendant waived his right to impeach Casaus with this statement by failing to lay a proper foundation pursuant to SCRA 1986, 11–613(B) (extrinsic evidence of prior inconsistent statement not admissible unless witness is afforded opportunity to explain or deny and opposite party is afforded opportunity to interrogate him thereon). While on the stand Casaus was not asked about the alleged remark made to Aragon. The record shows nothing to indicate whether Casaus would have admitted, denied, or otherwise qualified the statement had he been given the opportunity. In sum, we find no abuse of discretion by the trial court in excluding any of the evidence challenged by defendant.

JURY INSTRUCTIONS

Defendant submits that it was fundamentally unfair and a violation of the immunity agreement for the jury to be instructed on aiding and abetting when the agreement was silent on the issue. Defendant fails, however, to explain or cite authority to support his claim that the state's decision to prove the charges of felony murder and armed robbery on a theory of aiding and abetting violated the immunity agreement. The rule against using immunized testimony or evidence derived therefrom in a subsequent proceeding against a defendant does not generally prevent, restrict, or limit the prosecution from employing various theories in an attempt to prove the charges, so long as the proof derives from legitimate independent sources. *See Kastigar*, 406 U.S. at 460, 92 S.Ct. at 1664.

Additionally, defendant argues that the uniform jury instructions given, SCRA 1986, 14–2820 to –22, were deficient in that the terms "help" and "encourage" were not defined, which could leave the jury in a

position to speculate or guess in reaching its verdict. Although defense counsel argued at trial that these terms were too vague to allow the jury to determine guilt, no supplemental or any type of definitional instruction was tendered, nor did defendant request the court to amplify the meaning of the terms for the jury.

Generally, definitional instructions are not required when the terms are used in their ordinary sense and no error is committed in refusing to instruct on a term or word with a common meaning. *State v. Mankiller*, 104 N.M. 461, 469, 722 P.2d 1183, 1191 (Ct.App.), *cert. denied*, 104 N.M. 378, 721 P.2d 1309 (1986). Here the terms "help", "cause", and "encourage" are words with common meanings, thus not requiring definition for the jury, and the court's failure to give a definitional jury instruction was not error. *See State v. Doe*, 100 N.M. 481, 483, 672 P.2d 654, 656 (1983).

COMMUNICATION BETWEEN COURT AND JUROR

█ Defendant contends the court violated his constitutional right to be present during every stage of his trial by communicating with a juror during deliberations outside of his presence. The record indicates that on November 20, 1989, the jury began deliberations after lunch, and, later that day, communicated to the court that it would like to remain longer that day to continue deliberations. After returning the following morning at 9:00 a.m. and deliberating for forty-five minutes, the jury reached its verdict. As soon as the attorneys arrived that morning the court notified them of the 8:15 a.m. communication by one of the jurors, who informed the court that her father had died the previous evening and asked if an alternate juror could be called in. The trial court refused the request and asked the juror if she could continue deliberating, to which she affirmatively replied.

Defendant suggests that his claim is analogous to *State v. Wilson*, 109 N.M. 541, 787 P.2d 821 (1990). However, *"Wilson* acknowledged that not every instance of communication between a judge and ju-

ror during trial outside a defendant's presence was reversible error." *State v. Haar*, 110 N.M. 517, 523, 797 P.2d 306, 312 (Ct. App.), *cert. denied* 110 N.M. 330, 795 P.2d 1022 (1990). We distinguish this case from *Wilson* on two grounds. First, Wilson's conviction was reversed based on a finding of cumulative error to which the improper juror communication merely contributed. The reversal was not solely based upon the communication. Second, the juror in *Wilson* "persisted in making his objection to further service known to the judge * * * [and] had a far more disabling fear, namely that his religious convictions would mandate his complete incapacity to serve on the jury." Here the juror's request to leave jury service summarily was refused without persistence or objection on the part of the juror. Unlike *Wilson*, the trial judge in the instant case had no advance knowledge of the juror's personal circumstances and notified the attorneys within minutes of their arrival at the courthouse. We find no error in the way the communication was handled by the judge and no prejudice to defendant.

CUMULATIVE ERROR

█ Finally, defendant argues the cumulative impact of the individual errors alleged above denied him a fair trial. He cites *State v. Martin*, 101 N.M. 595, 601, 686 P.2d 937, 943 (1984), for the proposition that even if insufficient alone to rise to the level of reversible error, the cumulative impact of all errors so pervaded and infected the trial as to render it unfair.

"The doctrine of cumulative error has no application where no errors were committed and where defendant received a fair trial." *State v. Lara*, 110 N.M. 507, 517, 797 P.2d 296, 306 (Ct.App.), *cert. denied*, 110 N.M. 330, 795 P.2d 1022 (1990). Having found no errors as alleged, we find no basis for defendant's claim that he was denied a fair trial grounded on alleged cumulative error.

CONCLUSION

Defendant has failed to persuade us that error was committed on any of the issues raised on appeal. Therefore, based upon

the foregoing, defendant's conviction and sentence are affirmed in their entirety.

IT IS SO ORDERED.

BACA and FRANCHINI, JJ., concur.