This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-37692

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**ANTHONY DUNSWORTH,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Cindy Leos, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**YOHALEM, Judge.**

**{1}** Defendant Anthony Dunsworth appeals his convictions for aggravated battery (deadly weapon), aggravated battery (great bodily harm), and criminal damage to property on seven grounds: (1) the two convictions for aggravated battery violate Defendant's right to be free from double jeopardy; (2) the evidence was insufficient to support all three convictions; (3) the district court abused its discretion in allowing the State to impeach Defendant with evidence of five prior felony convictions; (4) the district court's failure to instruct on specific intent gave rise to fundamental error; (5) the district court's refusal to consider the jury's request for transcripts gave rise to fundamental

error; (6) Defendant's prior convictions were not sufficiently proven and were improperly used in enhancing his sentence; and (7) the assistance of Defendant's counsel was ineffective.

**{2}** We conclude the district court improperly "merged" the alternative counts of aggravated battery in violation of Defendant's right to be free from double jeopardy and accordingly remand to the district court to vacate one of the convictions. We otherwise affirm.

## BACKGROUND

**{3}** On November 14, 2016, Brian Fulbright (Victim) was injured when Defendant threw a half-brick at the window of a car in which Victim was a passenger. Victim and Defendant had a contentious relationship before the incident because Victim was dating Defendant's ex-girlfriend. The brick shattered the passenger window of the car and hit Victim in the face near his right eye. Victim was treated at the hospital where his wound was closed, but in January 2017 his face swelled from infection as a complication of a broken cheekbone, which required a week-long hospital stay.

**{4}** Defendant was charged with aggravated battery with a deadly weapon, or in the alternative, aggravated battery with great bodily harm, contrary to NMSA 1978, Section 30-3-5(A), (C) (1969), and with criminal damage to property, contrary to NMSA 1978, Section 30-15-1 (1963). A jury found Defendant guilty of all three offenses.

## DISCUSSION

### I. One of the Aggravated Battery Convictions Must Be Vacated to Avoid Violating Defendant's Right to Be Free From Double Jeopardy

**{5}** Defendant was charged with one count of aggravated battery under two alternative theories (deadly weapon and great bodily harm), and was convicted of aggravated battery under both theories. Defendant contends the two convictions violate his right to be free from double jeopardy. The State concedes that one of the aggravated battery convictions should be vacated, and while we are not bound by this concession, *see State v. Guerra*, 2012-NMSC-027, ¶ 9, 284 P.3d 1076, we agree.

**{6}** The record reflects that the parties and the district court viewed aggravated battery as a single count or charge and intended for one of the alternatives—deadly weapon or great bodily harm—to be vacated to avoid a double jeopardy violation. This approach is consistent with New Mexico case law. *See, e.g.*, *State v. Cooper*, 1997-NMSC-058, ¶ 53, 124 N.M. 277, 949 P.2d 660 (vacating one of two aggravated battery convictions when the state brought one charge of aggravated battery under two theories and the jury convicted the defendant on both theories). The district court, however, "merged" the two alternatives rather than vacating one of the two. The district court's solution of merging the alternatives, when New Mexico courts have not adopted the common law merger doctrine, *see Swafford v. State*, 1991-NMSC-043, ¶ 24, 12 N.M. 3,

810 P.2d 1223, had the effect of running the sentences for two convictions of aggravated battery concurrently. Nonetheless, because the both convictions remain in place, concurrent sentencing does not correct the double jeopardy violation. Accordingly, we remand to the district court to vacate one of the aggravated battery convictions.

## II.    Sufficient Evidence in the Record Supports Defendant's Convictions

**{7}**    Defendant next challenges the sufficiency of the evidence supporting his convictions. Because it is not clear which aggravated battery conviction will be vacated on remand, we address all three convictions.

**{8}**    "[W]e apply a substantial evidence standard to review the sufficiency of the evidence at trial." *State v. Chavez*, 2009-NMSC-035, ¶ 11, 146 N.M. 434, 211 P.3d 891. In doing so, we determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176 (emphasis, internal quotation marks, and citation omitted). We "view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *Id.*

## A.    Aggravated Battery (Deadly Weapon)

**{9}**    Defendant contends that there is insufficient evidence of aggravated battery (deadly weapon) because he acted in self-defense and did not intend to injure Victim and because a half-brick is not a deadly weapon. Unpersuaded, we conclude that substantial evidence supports Defendant's conviction.

**{10}**    To convict Defendant of aggravated battery with a deadly weapon, the jury was instructed, in relevant part, that the State must prove (1) that Defendant intended to injure Victim; and (2) that the brick, when used as a weapon, could cause death or great bodily harm. *See State v. Garcia*, 2016-NMSC-034, ¶ 17, 384 P.3d 1076 ("Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." (alteration, internal quotation marks and citation omitted)). Intent may be proved by circumstantial evidence since "an individual's intent is seldom subject to proof by direct evidence[.]" *State v. Allen*, 2000-NMSC-002, ¶ 65, 128 N.M. 482, 994 P.2d 728 (internal quotation marks and citation omitted). An object or instrument is a deadly weapon if the jury decides that it is a "weapon which is capable of producing death or great bodily harm" or a weapon "with which dangerous wounds can be inflicted[.]" NMSA 1978, § 30-1-12(B) (1963); *see also State v. Neatherlin*, 2007-NMCA-035, ¶¶ 11, 15, 141 N.M. 328, 154 P.3d 703 (concluding that "a determination regarding an object's status as a deadly weapon requires a functional inquiry into the manner of use").

**{11}**    Given the circumstances of this case, a jury could reasonably conclude that Defendant intended to injure Victim. At trial, Defendant admitted that he and Victim had

a contentious relationship, that he was not happy about Victim showing up unexpectedly, and that he recognized Victim as the passenger of the car before he threw the brick. The jury was free to reject Defendant's testimony that he threw the brick to gain time to escape, testimony which was contradicted by a witness who testified that Defendant ran toward the vehicle before he threw the brick, rather than away from it. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829.

**{12}** The jury could also reasonably conclude that the brick was a deadly weapon. Defendant attempts to distinguish a "half-brick," used here, from a "complete brick," arguing that the former is not capable of causing death or great bodily harm. This argument disregards any inquiry into the object's manner of use and is without merit. The jury was given the definition of deadly weapon and photos of the brick and the shattered car window. Defendant threw the brick with enough force to shatter the window and break Defendant's cheekbone. We do not reweigh the evidence or substitute our judgment for that of the jury, *State v. Galindo*, 2018-NMSC-021, ¶ 24, 415 P.3d 494; this evidence is sufficient to support the jury's finding that Defendant used the half-brick as a deadly weapon.

## B.    Aggravated Battery (Great Bodily Harm)

**{13}** To convict Defendant of aggravated battery with great bodily harm, the jury was required to determine, in relevant part, whether Defendant caused great bodily harm to Victim or acted in a way that would likely result in great bodily harm to Victim. The jury was instructed that "great bodily harm" means "an injury to a person which creates a high probability of death or results in serious disfigurement or results in loss of any member or organ of the body or results in permanent or prolonged impairment of the use of any member or organ of the body." *See* § 30-1-12(A) (defining great bodily harm). In the context of great bodily harm, "prolonged impairment" is not a technical term, and it is up to the jury to decide whether an impairment lasts for a sufficiently lengthy or unusually long time under the circumstances to be considered prolonged. *State v. Cordova*, 2016-NMCA-019, ¶ 19, 366 P.3d 270.

**{14}** A jury could reasonably find that Victim suffered prolonged impairment as a result of his injury. Defendant argues that, absent any medical testimony, the State failed to prove that Victim's injuries rose to the level of great bodily harm. The law, however, does not require that great bodily harm be proved by medical testimony, and the jury may rely on rational inferences from lay testimony in making its determination. *State v. Bell*, 1977-NMSC-013, ¶ 15, 90 N.M. 134, 560 P.2d 925. It is undisputed that, as a result of being hit in the face with a brick, Victim received lacerations, a black eye, and a broken cheekbone. It is further undisputed that Victim later developed an infection, which required a one-week hospitalization. This evidence is sufficient for the jury to find that Victim suffered prolonged impairment rising to the level of great bodily harm.

## C.    Criminal Damage to Property

**{15}** To convict Defendant of criminal damage to property, the jury was instructed that it must find that Defendant intentionally damaged the property of another. *See* § 30-15-1; UJI 14-1501 NMRA. The jury was also instructed that "[a] person acts intentionally when he purposely does an act which the law declares to be a crime." Defendant did not dispute that he threw the brick at the car from a position where it would hit the car and cause property damage. That evidence is sufficient to establish the general intent required to convict of intentional damage to property—that Defendant purposely threw a brick at a car.

### III. The District Court Did Not Abuse Its Discretion in Allowing the State to Impeach Defendant With Evidence of Five Prior Felony Convictions

**{16}** Defendant argues that the district court abused its discretion in allowing the State to impeach him at trial by eliciting the number of prior felony convictions on his record. We disagree.

**{17}** For impeachment purposes, evidence of a felony conviction not involving dishonesty "must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant[.]" Rule 11-609(A)(1)(b) NMRA. The district court has no discretion to exclude evidence of a criminal conviction for a crime involving dishonesty; the evidence must be admitted. Rule 11-609(A)(2). We review the district court's decision to admit or exclude evidence of criminal convictions not involving dishonesty for an abuse of discretion. *State v. Guerra*, 2012-NMSC-014, ¶ 36, 278 P.3d 1031. "We cannot say the [district] court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *Rojo,* 1999-NMSC-001, ¶ 41 (internal quotation marks and citation omitted).

**{18}** We conclude that the district court did not abuse its discretion in allowing the State to impeach Defendant by eliciting the number of times he had been convicted of a felony. Based on the parties' pretrial motions, the district court ruled that the State could offer evidence that Defendant was a convicted felon, but could not identify the prior convictions, except for his conviction for tampering with evidence, a crime the defense agreed was a crime of dishonesty. *See* Rule 11-609(A)(2). When Defendant took the stand, he admitted to having three prior felony convictions. Then, on cross-examination, Defendant admitted to two more prior felony convictions. In accordance with the district court's ruling, the only felony that was identified was tampering with evidence, which the parties agreed involved dishonesty.

**{19}** Defendant contends that since this case turned on credibility, the district court's ruling allowing the State to question him about the number of prior felony convictions was unduly prejudicial to him. The Supreme Court's adoption of Rule 11-609, however, "is tantamount to a determination that any felony punishable by imprisonment in excess of one year bears on credibility." *State v. Lucero*, 1982-NMCA-102, ¶ 10, 98 N.M. 311, 648 P.2d 350. Where a defendant's credibility is a central issue in the case, "it be[comes] more, not less, compelling to explore all avenues which would shed light on

which of the two witnesses was to be believed." *State v. Lozoya*, 2017-NMCA-052, ¶ 32, 399 P.3d 410 (internal quotation marks and citation omitted). The probative value of admitting the number of prior felony convictions on Defendant's record is therefore significant. We find no abuse of discretion in the district court's decision that the probative value outweighed any prejudice.

## IV. The District Court's Failure to Instruct on Specific Intent Was Not Fundamental Error

**{20}** Defendant next argues that the district court's failure to give an instruction defining specific intent constituted fundamental error because the instructions confused general and specific intent such that it was unclear whether the jury found that Defendant had the specific intent required for aggravated battery. Defendant did not object below to the given instructions, or to the answer given by the district court to the jury's inquiry about the meaning of "intent," so we review for fundamental error. *See State v. Sandoval*, 2011-NMSC-022, ¶ 13, 150 N.M. 224, 258 P.3d 1016 ("If the issue has not been preserved, [the appellate court] reviews for fundamental error.").

**{21}** In reviewing jury instructions for fundamental error, we first determine whether a reasonable juror would have been confused or misdirected by the instructions. *Id.* ¶ 20. "If we conclude that a reasonable juror would have been confused or misdirected, then we review the entire record, placing the jury instructions in the context of individual facts and circumstances of the case, to determine whether the defendant's conviction was the result of a plain miscarriage of justice." *Id.* (alteration, internal quotation marks, and citation omitted). Under the fundamental error standard, a jury verdict will not be reversed unless the circumstances "shock the conscience or implicate a fundamental unfairness within the system that would undermine judicial integrity if left unchecked." *Cunningham*, 2000-NMSC-009, ¶ 21 (internal quotation marks and citation omitted).

**{22}** In this case, the instructions were not confusing and therefore do not satisfy the first step in the fundamental error analysis. "Generally, definitional instructions are not required when the terms are used in their ordinary sense and no error is committed in refusing to instruct on a term or word with a common meaning." *State v. Gonzales*, 1991-NMSC-075, ¶ 30, 112 N.M. 544, 817 P.2d 1186. Both aggravated battery instructions provided to the jury—deadly weapon and great bodily harm—instructed the jury that it must find that "[D]efendant intended to injure [Victim]." "Intent," here, was used according to its common meaning of "aim" or "purpose," and the jury was properly instructed that the intent required is the specific intent to injure the victim. *See Intent*, *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/intent (last visited Sept. 20, 2021).

**{23}** Defendant's claim that the jury was confused turns primarily on Defendant's argument that the jury was given two different definitions: one of the general intent required for damage to property and another of the specific intent required for aggravated battery. We are not persuaded that the two definitions were confusing. The definition of the intent required for aggravated battery was included as an element in the

aggravated battery instruction, and the jury was, therefore, well aware that definition applied to aggravated battery. Similarly, the definition of the general intent required for damage to property was given, as the uniform jury instructions require, immediately following the instruction on the other elements of damage to property, and was specifically identified as an element of the crime of damage to property.

## V. The District Court's Refusal to Provide the Jury With a Transcript of Defendant's Testimony Was Not Fundamental Error

**{24}** Defendant also argues that fundamental error occurred when the district court refused to either replay testimony or inform the jury of the potential to replay testimony when they requested a transcript of Defendant's testimony during deliberations. We disagree.

**{25}** During deliberations, the jury sent out a note that said, "We want the exact transcript of [Defendant's] testimony." Although the trial testimony was recorded, there was no written transcript. The district court judge prepared the following response, which was approved by both parties:

> As previously stated, you have received all the testimonial and physical evidence which has been admitted in this case and you must rely upon your collective memories of it. Specifically, transcripts will not be prepared, additional reports and statements cannot be provided. You must decide this case solely on the evidence you have already received.

**{26}** Defendant contends on appeal that this response is an incorrect statement of the law because under Rule 5-610(A) NMRA, the district court could have, in its discretion, played the recorded testimony for the jury, but did not inform the jury of this option. *See State v. Montoya*, 1974-NMCA-044, ¶¶ 7-8, 86 N.M. 316, 523 P.2d 814 (holding that it was not an abuse of discretion to, at the jury's request, play back recorded testimony).

**{27}** Since defense counsel did not object at trial, we review the district court's decision for fundamental error. *See* Rule 12-321(B)(2)(c) NMRA; *Cunningham*, 2000-NMSC-009, ¶ 16. "Fundamental error only applies in exceptional circumstances when guilt is so doubtful that it would shock the judicial conscience to allow the conviction to stand." *Cunningham*, 2000-NMSC-009, ¶ 13 (internal quotation marks and citation omitted).

**{28}** Given this standard, we hold that the district court's refusal to provide the jury with a transcript did not rise to the level fundamental error in this case. The decision to have testimony read to the jurors once they have retired to consider their verdict is up to the discretion of the district court. Rule 5-610(A); *Montoya*, 1974-NMCA-044, ¶¶ 7-8. Although the district court may have had discretion to answer differently and to allow the jury to review the testimony, Defendant fails to show how the denial of this request, following a trial that lasted only one-half day, undermines the jury's verdict. We would have to speculate about both why the jury requested that testimony and what impact

rehearing that testimony would have on the verdict. This we refuse to do. *See State v. Holly*, 2009-NMSC-004, ¶ 30, 145 N.M. 513, 201 P.3d 844 (concluding that, in a situation requiring multiple levels of speculation, "[w]e ought not reverse a criminal conviction on such guesswork").

## VI.    Defendant's Prior Convictions Were Sufficiently Proven and Properly Used to Enhance His Sentence

**{29}**    Defendant makes two arguments regarding the State and district court's use of his prior felony convictions: (1) the State's manner of proving Defendant's prior convictions was not sufficiently reliable; and (2) Defendant's prior felony convictions were improperly used to enhance his sentence.

### A.    The Documents Printed From Odyssey Were Sufficiently Reliable to Establish a Prima Facie Case for Sentence Enhancement

**{30}**    Defendant argues that the State's evidence of his prior convictions, in the form of documents printed from Odyssey, which were neither certified nor shown to be self-authenticating, were not admissible into evidence. Defendant contends that without certification or witness testimony, the documents printed from Odyssey were not properly authenticated and cannot be relied on to prove prior convictions. We disagree.

**{31}**    "We review the admission of evidence under an abuse of discretion standard and will not reverse in the absence of a clear abuse." *State v. Sarracino*, 1998-NMSC-022, ¶ 20, 125 N.M. 511, 964 P.2d 72.

**{32}**    At Defendant's sentence enhancement hearing, the State presented evidence of three prior felony convictions in the form of documents printed from Odyssey: a grand jury indictment with Defendant's name, social security number, date of birth, and physical description; a judgment and sentence report reflecting the same name, social security number, and date of birth; and a repeat offender plea and disposition agreement with the same identifying information, plus Defendant's signed admission that he had prior felony convictions. Defendant objected to the admission of the documents, claiming that only court documents certified by a court clerk or documents certified by the Department of Corrections were admissible. Defendant describes the judge as having independently cross-referenced the documents provided with Odyssey, although that interaction is not reflected in the record.

**{33}**    Defendant admits there is no express authority requiring that documents used to prove prior convictions be certified copies and instead contends that they must be either self-authenticating under Rule 11-902(2) NMRA or authenticated by witness testimony in order to be admitted. This argument disregards other methods of authentication provided by our Rules of Evidence. For example, an item of evidence can be authenticated by comparison with an authenticated specimen, Rule 11-901(B)(3) NMRA; or examination of the item's distinctive characteristics such as appearance, contents, substance, or internal patterns, Rule 11-901(B)(4); or upon a showing that the

item is a public record, recorded or filed as authorized by law or from the office where items of the kind are kept, Rule 11-901(B)(7). Given these accepted alternative methods of authentication, all of which applied to the documents offered by the State, we cannot say that the district court abused its discretion in admitting the State's evidence of Defendant's prior convictions.

## B. Prior Convictions Were Properly Used in Enhancing Defendant's Sentence

**{34}** Defendant also argues that enhancing his sentence for a violent crime based on drug-related prior offenses is cruel and unusual punishment and a violation of his due process rights and of the principle of fundamental fairness. The district court rejected this argument, stating that the quality or type of a prior conviction is irrelevant under the statute and only the existence of a prior conviction is significant. Defendant does not cite any authority to support the claim that a prior conviction must be similar to the conviction at issue in order to rely on the prior conviction to enhance a sentence. "Issues raised in appellate briefs which are unsupported by cited authority will not be reviewed by us on appeal." *In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329. Therefore, we will not address this claim further.

## VII. Defendant Has Not Made a Prima Facie Case of Ineffective Assistance of Counsel

**{35}** Finally, Defendant argues ineffective assistance of counsel because trial counsel "failed to present evidence or ask questions that would have demonstrated that [Victim] was violent, dangerous, and had previously attacked [Defendant]." The State responds that Defendant has not made a prima facie case of ineffective assistance of counsel. We agree with the State.

**{36}** We rarely resolve claims of ineffective assistance of counsel on direct appeal because the appellate record most often lacks sufficient information to support such a claim. *See, e.g.*, *State v. Astorga*, 2015-NMSC-007, ¶ 17, 343 P.3d 1245 ("On direct appeal, the record is frequently inadequate to either evaluate counsel's performance or to determine prejudice."). Only when a defendant presents a prima facie case of ineffective assistance of counsel will we remand to the district court for evidentiary proceedings. *State v. Bernal*, 2006-NMSC-050, ¶ 33, 140 N.M. 644, 146 P.3d 289. "For a successful ineffective assistance of counsel claim, a defendant must first demonstrate error on the part of counsel, and then show that the error resulted in prejudice." *Id.* ¶ 32.

**{37}** In this case, Defendant asserts that he submitted a letter to the district court after sentencing that alleged trial counsel did not present facts Defendant believed supported his claim of self-defense. The letter, however, is not in the record. With no other evidence of error or any prejudice it may have caused, we hold that Defendant has not made a prima facie case of ineffective assistance of counsel, and we decline to review this claim on direct appeal. *See State v. Samora*, 2013-NMSC-038, ¶ 23, 307 P.3d 328.

## CONCLUSION

**{38}** For the above reasons, we remand for the district court to vacate one of Defendant's aggravated battery convictions and otherwise affirm his convictions of aggravated battery and damage to property.

**{39}   IT IS SO ORDERED.**

**JANE B. YOHALEM, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**ZACHARY A. IVES, Judge**